The Chancellor.
The case struck me upon the argument, as being very plain. But as it may have appeared to other members of the court in a different, or, at least, in a more serious light, I will very briefly state the reasons why I am of opinion, that the judgment of the supreme court ought to be affirmed. .
The contract on which the controversy arises, was made in the following manner:
Isaac Clason employed John Townsend to purchase a quantity of rye for him. He, in pursuance of this authority, purchased of Bailey & Foorhees 3,000 bushels, at one dollar per" bushel, and at the time of closing the bargain, he wrote a memorandum in his memorandum book, in "the presence of Bailey & Foorhees, in these words: “ February 29lh, bought for Isaac Clason, of Bailey & Foorhees, 3,000 bushels of good merchantable rye, deliverable from the 5th to the 15th of April next, at one dollar per bushel, and payable on delivery.”
The terms of the sale and purchase had been previously communicated to Clason, and approved of by him, and yet at the time of delivery, he refused to accept and pay for the rye.
The objection to the contract, on the part of Clason, is that it was nota valid contract within the statute of frauds.
1. Because the contract was not signed by Bailey & Foorhees.
2. Because it was written with a lead pencil, instead of pen and ink.
I will examine each of these objections.
It is admitted that Clason signed this contract, by the insertion of his name by his authorized agent, in the body of the memorandum. The counsel for the plaintiff in error do not contend against the position, that this was a sufficient subscription on his part. It is a point settled, that if the name of a party appears in the memorandum, and is applicable to the whole substance of the writing, and is put there by him or by his authority, it is immaterial in what part of the instrument the name appears,, whether at the top, in the middle, or at the bottom. *491 (Saunderson v. Jackson, 2 B. & Puller, 238. Welford v. Beazley, 3 Atk. 503. Stokes v. Moor, cited by Mr. Coxe in a note to 1 P. Wms. 771.) Forms are not regarded, and the statute is satisfied if the terms of the contract are iñ writing, and the names of the contracting parties appear. Clason’s name was inserted in the contract, by his authorized agent, and if it were admitted that the name of the other party was not there by their direction, yet the better opinion is, that Clason, the party who is sought to be charged, is estopped, by his name, from saying that the contract was not duly signed within the purview of the statute of frauds; and that it is sufficient, if the agreement be signed by the party to be charged.
It appears to me, that this is the result of the weight of authority both in the courts of law and equity.
In Ballard v. Walker, (3 Johns. Cases, 60.) decided in the supreme court, in 1802, it was held, that a contract to sell land, signed by the vendor only, and accepted by the other party, was binding on the vendor, who was the party there sought to be charged. So in Roget v. Merritt, (2 Caines, 117.) an agreement concerning goods, signed by the seller, and accepted by the buyer, was considered a valid agreement, and binding on the party who signed it.
These were decisions here, under both branches of the sta1tute, and the cases in the English courts are to the same effect.
In Saunderson v. Jackson, (2 Bos. & Pull. 238) the suit was against the seller, for not delivering goods according to a memorandum signed by him only, and judgment was given for the plaintiff, notwithstanding the objection that this was not a sufficient inote within the statute. In Champion v. Plumer, (4 Bos. & Pull. 252.) the suit was against the seller, who alone had signed the agreement. No objection was made that it was not signed by both parties, but the memorandum was held defective, because the name of the buyer was not mentioned at all, and consequently there was no certainty in the writing. Again, in Egerton v. Matthews, (6 East, 307.) the suit was on a memorandum for the purchase of goods, signed only by the defendant, who was the buyer, and it was held a good agreement within the statute. Lastly, in Allen v. Bennet, (3 Taunton, 169.) the seller was sued for the non-delivery of goods, in pursuance of an agreement signed by him only, and judgment was rendered for *492 •the.plaintiff. In that case, Ch. J. Mansfield made the observation} that." the cases of Egerton v. Matthews, Saunderson v. Jackson, and Champion v. Plumer, suppose a signature by the seller to be sufficient ; and every one knows it is the daily practice of the court of chancery, to establish contracts signed by one person only, and yet a court of equity can no more dispense with the statute of frauds than a court of law can.’’ So Lawrence, J. • observed, that “ the statute clearly supposes the probability of there being a signature by one person only.’’
If we pass from the decisions at law to the courts of equity, we. meet with the same uniform construction. Indeed, Lord Eldon has said, (18 Vesey, 183.) that chancery professes to follow courts of law, in the construction of the statute of frauds.
In Hatton v. Gray, (2 Chan. Cas. 164. 1 Eq. Cas. Abr. 21, pl. 10.) the purchaser of land signed the agreement, and not the other party, and yet the agreement was held by Lord Keeper North to be binding on him, and this too, on a bill for a specific performance. So in Coleman v. Upcol,(5 Viner, 527. pl. 17.) the Lord Keeper FVright held, that an agreement concerning lands was within the statute, if signed by the party to be charged, and.that there was no need of its being signed by both parties, as the plaintiff, by his bill for a specific performance, had submitted to perform what was required on his part to be performed.
Lord Hardwicke repeatedly adopted the same language. In Buckhouse. v. Crosby, (2 Eq. Cas. Abr. 32, pl. 44.) he said, he h.ad often' known the objection taken, that a mutual contract in writing, signed by both parties, ought to appear, but that the objection had as often been overruled ; and in Welford v. Beazely, (3 Atk. 503.) he said, there were cases where writing a letter, settjng forth the terms of an agreement, was held a signing within - the statute; and in Owen v. Davies, (1 Ves. 82.) an agreement to sell land, signed by the defendant only, was held binding.
The modern cases are equally explicit. In. Cotton v. Lee, before the lords commissioners, in 1770, which is cited in 2 Bro. 564, it was deemed sufficient,, that the party to be charged had signed the agreement. So in Selon v. Slade, (7 Vesey, 275.) Lord Eldon, on a bill for a specific performance, against the buyer of land, , said, that the agreement being signed by the defendant only, made him, within the statute, a party to be charged. The case of Fowle v. Freeman, (9 Vesey, 351.) was an *493 express decision of the Master of the Rolls, on the very point, that an agreement to sell lands, signed by the vendor only, was binding.
There is nothing to disturb this strong and united current of authority, but the observations of Lord Ch. Redesdale, in Lawrenson v. Butler, (1 Sch. & Lef. 13.) who thought that the contract ought to be mutual, to be binding, and that if one party could not enforce it, the other ought not. To decree performance, when one party only was bound, would “ make the statute really a statute of frauds, for it would enable any person who had procured another to sign an agreement, to make it depend on his own will and pleasure whether it should be an agreement or not.” The intrinsic force of this argument, the boldness with which it was applied, and the commanding weight of the very respectable character who used it, caused the courts, for a time, to pause. Lord Eldon, in 11 Vesey, 592. out of respect to this opinion, waived, in that case, the discussion of the point; but the courts have, on further consideration, resumed their former tract. In Western v. Russell, (3 Vesey & Beames, 192.) the Master of the Rolls declared he was hardly at liberty, notwithstanding the considerable doubt thrown upon the point by Lord Redesdale, to refuse a specific performance of a contract to sell land, upon the ground that there was no agreement signed by the party seeking a performance : and in Ormond v. Anderson, (2 Ball & Beatty, 370.) the present Lord Chancellor of Ireland, (and whose authority, if we may judge from the ability of his decisions, is not far short of that of his predecessor,) has not felt- himself authorized to follow the opinion of Lord Redesdale. “ I am well aware,” he observes, “ that a doubt has been entertained, by a judge of this court, of very high authority, whether courts of equity would specifically execute an agreement where one party only was bound; but there exists no provision in the statute of frauds to prevent the execution of such an agreement.” He then cites, with approbation, what was said by Sir J. Mansfield, in Allen v. Bennet.
I have thought, and have often intimated, that the weight of argument was in favour of the construction that the agreement concerning lands, to be enforced in equity, should be mutually binding, and that the one party ought not to be at liberty to enforce, at his pleasure, an agreement which the other was not entitled to claim. It appears to be settled, (Hawkins v. Holmes, *494 1 P. Wms. 770.) that though the plaintiff has signed the agreetnent, he never can enforce it against the party who has not signed it. The remedy, therefore, in such case, is not mutual. Bu£i notwithstanding this objection, it appears from the review °f £he cases, that the point is too well settled to be now questioned.
There is a slight variation in the statute respecting agreements concerning the sale of lands, and agreements concerning the sale of chattels, in as much as the one section (being the 4th section of the English, and the 11th section of our statute,) speaks of the party, and the other section (being the 17th of the English, and the 15th of ours,) speaks of the parties to be charged. But I do not find from the cases that this variation has produced any difference in the decisions. The construction, as to the point under consideration, has been uniformly the same-in both cases.
Clason, who signed the agreement, and is the party sought to be charged, is then, according to the authorities, bound by the agreement, and be cannot set up the statute in bar. But I do not deem it absolutely necessary to place the cause on this ground, though as the question was raised and discussed, I thought it would be useful to advert to the most material cases, and to trace the doctrine through the course of authority. In my opinion, the objection itself is not well founded in point of fact.
The names of Bailey fy Voorhees are as much in the memorandum as that of Clason. The words are, “ Bought for Isaac Clason, of Bailey Voorhees, 3,000 bushels,” &c.; and how came their names to be inserted? Most undoubtedly they were inserted by their direction and consent, and so it appears by the special verdict. The jury find, that when the bargain was closed, Townsend,, the agent of Clason, did, at the time, and in their presence, write the memorandum; and if so, were not their names inserted by their consent ? Was not Townsend their agent for that purpose ? If they had not assented to the memorandum, they should have spoken. But they did assent, for the memorandum was made to reduce the bargain to writing in their presence, at the time it was closed. It was, therefore, as much their memorandum as if they had written it themselves. Townsend was, so far, the acknowledged agent of both parties. The auctioneer who takes down the name of the buyer, when he *495 bids, is, quoad hoc his agent. (Emmerson v. Heelis, 2 Taunt. 38.) The contract was, then, in judgment of law, reduced to writing, and signed by both parties, and it appears to me to be as unjust as it is illegal, for ’Clason, or his representatives, to get rid of so fair a bargain, On so groundless a pretext. ' 7
2. The remaining objection is, that the memorandum was made with a lead pencil.
The statute requires a writing. It does not undertake to define with what instrument, or with what material the contract shall be written. It only requires it to be in writing, and signed, &c.; the verdict here finds that the memorandum was written, but it proceeds further, and tells us with what instrument it was written, viz. with a lead pencil. But what have we to do with the kind of instrument which the parties employed, when we find all that the statute required, viz. a memorandum of the contract in writing, together with the names of the parties ?
To write is to express our ideas by letters visible to the eye. The mode or manner of impressing those letters is no part of the substance or definition of writing. A pencil is an instrument with which we write without ink. The ancients understood alphabetic writing as well as we do, but it is certain that the use of paper, pen, and ink, was, for a long time, unknown to them. In the days of Job they wrote upon lead with an iron pen. The ancients used to write upon hard substances, as stones, metals, ivory, wood, See. with a style or iron instrument. The next improvement was writing upon waxed tables; until, at last, paper and parchment were adopted ; when the use of the calamus or reed was introduced, The common law has gone so far to regulate writings, as to make it necessary that a deed should be written on paper or parchment, and not on wood or stone. This was for the sake of durability and safety ; and this is all the regulation that the law has prescribed. The instrument, or the material by which letters were to be impressed on paper or parchment, has never yet been defined; This has been left to be governed by public convenience and usage; and as far as questions have arisen on this subject, the courts have, with great latitude and liberality, left the parties to their own discretion. It has, accordingly, been admitted, (2 Black. Com. 297. 2 Bos. fy. Pull. 238. '3 Esp. Rep. 180.) that printing was writing, within the statute, and (2 Bro. 585.) that stamping was equivalent to. *496 signing, and (8 Vesey, 175.) that making a mark was subscribing within the act. I do not find any case in the courts of common law in which the very point now before us has been decided, viz. whether writing with a lead pencil was sufficient; but there are several- cases in which such writings were produced, and no objection taken. The courts have impliedly admitted that writing with such an instrument, without thé use of any liquid, was valid. Thus in a case in Comyrt’s Reports, (p. 451.) the counsel cited the case of Loveday v. Claridge. in 1730, where Loveday, intending to make his will, pulled a paper out of his pocket, wrote some things down with ink, and some with a pencil, and it was held a good' will. But we have a more full and authentic authority in a late case dec¡ded at doctors commons, (Rymes v. Clarkson, 1 Phillim. Rep. 22.) where the very question arose on the validity of a codicil written with a pencil. It was a -point over which the prerogative court had complete jurisdiction, and one objection taken to the codicil was the material with which it was written, but it was contended, on the other side, that a man might write his will with any material he pleased, quocunque modo velit, quocunque modo possit, and it was ruled by Sir John Nicholl, that a will or codicil written in pencil was valid in law.
The statute of frauds, in respect to such contracts as the one before us, did not require any formal and solemn instrument. It only required a note or memorandum, which imports an informal writing done on the spot, in the moment and hurry and tumult of commercial business. A lead pencil is generally the most accessible and convenient instrument of writing, on such occasions, and I see no good reason why we should wish to p.ut an interdict on all memoranda written with a pencil. I am persuaded it wouldbe attended with much inconvenience, and ' afford more opportunities and temptation to parties to break faith with each other, than by allowing the writing with a pencil to stand. It is no doubt very much in use. The courts have frequently seen such papers before them, and have always assumed them to be valid. This is a sanction not to be disregarded.
I am, accordingly, of opinion that the judgment of the supreme court ought to be affirmed.
This was the opinion of the court. (Elmendorf and Livingston, senators, dissenting.)
*497 It was thereupon ordered, adjudged, and decreed, that the judgment of the supreme court be, in all things, affirmed, and that the. defendants recover from the plaintiffs their double costs, to be taxed, and that the record be remitted, &c.
Judgment affirmed,