[No. 2,138.]

## FERDINAND VASSAULT v. JAMES EDWARDS.

CORRECTION OF TRANSCRIPT.—It is the duty of counsel to have clerical and typographical errors in the transcript corrected, and they must see to it that the corrections are made in all the copies filed with the Clerk.

EXECUTORY CONTRACT FOR SALE OF LAND.—A proposal to sell real estate, reduced to writing, and signed by the vendor alone, in which he recites that he has sold to the vendee the land for a price named, and has received a certain sum as a deposit, as part payment, which the vendor was to refund if the title was rejected or bad, the sale to be subject to a search of and approval of title, and the vendee to have twenty days for the examination of the title, is a valid contract of sale entered into between the parties.

IDEM.—In such contract, had no time been fixed, the vendee would have been entitled to a reasonable time in which to exercise his election, but time having been fixed, it is of the essence of the contract, and the Court has no power to extend it.

IDEM.—If such contract is extended, in order that the vendor may perfect his title, and the vendee, as soon as the title is perfected, accepts the same, and tenders the money, he accepts the vendor's proposal within a reasonable time, and it then ripens into a complete contract of sale.

IDEM.—An executory contract for the sale of real estate is valid and binding, and can be enforced by the vendee, if signed by the vendor alone.

PLEADING AGREEMENT TO SELL LAND.—An averment in a complaint, that an agreement was made to sell land, is sufficient, without alleging that it was in writing and signed. If denied, the proof must show that it was in writing and signed.

APPEAL from the District Court of the Fifteenth Judicial District, City and County of San Francisco.

The plaintiff appealed.

The other facts are stated in the opinion.

*Daniel Rogers*, for Appellant.

It is claimed that the contract is not mutual, because not signed by both parties.

This objection certainly arises from a misconception of our statute. The eighth section of the Act concerning fraudulent conveyances and contracts, provides that "every contract for the leasing for a longer period than one year, or for the sale of any lands, or any interest in lands, shall be void, unless the contract, or some note or memorandum thereof expressing the consideration, be in writing, and be subscribed by the party by whom the sale or lease is to be made." We now see that our statute does not require the contract to be signed by both parties, but simply by the party by whom the contract is made.

It is conceded that, generally, a contract to be specifically enforced by the Court must be mutual; but we contend that the present case is one of the exceptions to this rule, and that the statute only requires the agreement to be signed by the party by whom the contract is made, or by his agent, and is silent as to the signature of the other party. (*Child* v. *Comber*, 3 Sw. 423n; *Backhouse* v. *Mohun*, id. 434n; *Seton* v. *Slade*, 7 Ves. 265; *Ballard* v. *Walker*, 3 Johns. Cases, 60; Fry on Specific Performance, Secs. 290–298.)

It has been held by both Courts of law and equity that the statute—requiring the agreement shall be signed by the party to be charged therewith, or by whom the sale is to be made, and not by both parties—is satisfied by the signature of the party against whom the contract is sought to be enforced. (*Laythorp* v. *Bryant*, 2 Bing. N. C. 735; see note

"C" to *Sweet* v. *Lee*, 3 Man. & Gr. 462; *Ballard* v. *Walker*, 3 Johns. Cases, 60; *Clason* v. *Baily*, 14 Johns. 484; *McCrea* v. *Purmont*, 16 Wend. 460; 21 Wend. 446.)

There is no presumption that the agreement to extend the time was verbal, but, on the contrary, there is a presumption that it was in writing. Assuming that the fact alleged is necessary and material—that it was necessary to allege and prove this agreement to extend the time—the allegation that such an agreement was made is sufficient, as the presumption is that it was in writing, if the law so required it to be. (*Champlin* v. *Parish*, 11 Paige, 405.)

*Campbell, Fox & Campbell*, for Respondent.

There was no absolute contract to sell, no obligation to purchase, and no mutuality between the parties. It was a mere proposal to sell, subject to conditions not complied with.

The written contract appears by the complaint never to have been in force at all. The title was rejected. On that state of facts there could have been no mutuality. Neither was at that moment bound to the other; and appellant must, on his own complaint, rely on the supplemental agreement or fail.

The complaint does not state this to be in writing. (*Green* v. *Palmer*, 15 Cal. 415.) The "writing" is a fact essential to the cause of action, and we, therefore, taking the pleading most strongly against the pleader, have treated the statement as that of a verbal extension. A verbal extension of a contract, required by the Statute of Frauds to be in writing, is void. An unexecuted verbal agreement, made by a mortgagee to discharge a mortgage by a release, is within the Statute of Frauds. (*Phillips* v. *Leavitt*, 54 Me. 405.) *Hasbruch* v. *Tappen*, 15 Johnson's R. 200, is directly in point, showing the verbal extension to be void, and leaving the parties to stand on the written contract

alone, which, we believe, the complaint itself shows is too weak to support appellant.


By the Court, RHODES, J.:

The alleged contract, which the plaintiff seeks to have specifically performed, is set out in the complaint. It is therein recited that the defendant had sold to the plaintiff the premises in controversy for the price of four thousand five hundred dollars, and had received fifty dollars in part payment; and the contract then proceeds as follows: "This sale is subject to a search of, and approval of, the title; and if the title is rejected or bad I agree to refund to said Vassault the fifty dollars paid on account; but if the title be approved I agree to convey the above premises to said Vassault, or his assigns, by a good and sufficient grant, bargain, and sale deed, on receiving the balance of the purchase money as above. And I hereby allow to said Vassault twenty (20) days for the examination of the title." It is signed by the defendant alone. The complaint alleges that the plaintiff paid the fifty dollars mentioned in the contract; that within the twenty days mentioned in the contract he examined the defendant's title to the lot, and found it defective in this, that the property had been sold to the defendant at a sale made under the order of the Probate Court; that the sale had been confirmed, and the administrator ordered to execute a deed, but that, in fact, no deed had been executed. It is further alleged that upon those facts being communicated to the defendant, he agreed to take the proper proceedings to obtain said deed, and "did extend the time mentioned in the agreement herein first above recited, for the purpose of completing said sale;" that the Probate Court subsequently ordered the administrator to execute a deed of the lot to the defendant; that thereupon the plaintiff did accept the title of the defendant, and so

notified him, requested him to execute a deed, and tendered him the balance of the purchase money; but that the defendant refused, and still refuses to execute the deed. The demurrer to the complaint, on the ground that it did not state facts sufficient to constitute a cause of action, was sustained, and the plaintiff failing to amend, final judgment was rendered for the defendant.

There is a discrepancy between the copy of the alleged contract, as contained in the transcript, and that which is set out in the plaintiff's brief. In the transcript the words are, "and if the title is rejected *or* bad;" while in the plaintiff's brief they are, "and if the title is rejected *as* bad." The defendant's brief leaves the matter in uncertainty, and we shall accept as correct the copy in the transcript. It is not material, however, to the questions which will be discussed, whether the reading in the transcript or in the plaintiff's brief is the correct one. The matter is alluded to for the purpose of saying that it is the duty of counsel to have clerical and typographical errors in the transcript, which are material, corrected, and that *they* must see to it that the corrections are made in *all the copies* filed with the Clerk.

The instrument above mentioned is not a contract. It is a mere proposal. "If the title is rejected or bad" then the defendant was to refund to the plaintiff the fifty dollars paid. If the title should be found to be bad the money was to be refunded; or if the plaintiff rejected the title the money was to be refunded. His right to reject was not subject to the condition that the title should be found to be bad; but he had the right, for any cause, to reject the title. The defendant insists that if the correct reading is "rejected *as* bad," still the plaintiff had the right to reject the title even if it were good; but it is not necessary to pass on that question.

The instrument, being a mere proposal for a sale, was a valid contract entered into between the parties; and if so,

at what time did it become complete and binding? So far as the original proposal was concerned, the plaintiff was limited to twenty days in which to accept or reject the title. Time is unquestionably of the essence of the proposal for the sale. Had no time been mentioned, the plaintiff would have been entitled to reasonable time in which to exercise his election, but the time having been fixed, the Court has no power to extend it.. And such is the rule among those dealing in real estate in this State, where such property is as salable as personal property. But it is alleged that when the plaintiff found that the defendant's title was bad, the defendant " did extend the time mentioned in the agreement herein first above recited, for the purpose of completing said sale." To this allegation the defendant objects, on the ground that the agreement to extend the time is not alleged to have been in writing. In this, however, the defendant is not sustained by the authorities. (See *Wakefield* v. *Greenwood*, 29 Cal. 599; and see cases collected in note to Sec. 505, Brown Stat. Fraud.) The Statute of Frauds has not changed the rules of pleading. The averment that the agreement was made is sufficient, without alleging that it was reduced to writing and signed; but if the statute requires the agreement to be in writing, the party alleging the agreement must, if the allegation be denied, prove it by the production of the writing, or by other competent evidence.

The time was extended, as well for the benefit of the defendant as the plaintiff, in order that the defendant might perfect his title to the lot, and although the length of the further period is not specified, yet as the plaintiff, upon the order of the Probate Court being made requiring the administrator to execute to the defendant a deed, accepted the title of the defendant, and notified him that he, the plaintiff, was ready to pay the purchase money, and requested him to execute the deed, it cannot be said that the plaintiff did not approve the title and accept the defendant's offer within a

reasonable time. As soon as the plaintiff accepted the defendant's proposition or offer, it ceased to be merely a proposition, on the part of the defendant, to sell, but it ripened into a contract of sale. When the offer was accepted—and the approval of the title and the tender of the balance of the purchase money was an acceptance of the offer—the contract of sale was complete. The instrument in writing filled all the requirements of the Statute of Frauds, and the acceptance by the plaintiff was a sufficient legal consideration for the agreement on the part of the defendant. (*Boston & M. R. R.* v. *Bartlett,* 3 Cush. 224; 1 Pars. Cont., 376 and 399.) It is only required by section eight of the Statute of Frauds that the contract of sale be signed by the party by whom the sale is to be made.

The further objection is taken under the demurrer that the contract is not mutual; and hence that a specific performance will not be decreed. The general rule undoubtedly is, that a contract will not be specifically enforced unless it be mutual—that is to say, such that it may be enforced by either party against the other. In cases falling within the fourth clause of the fourth section of the English Statute of Frauds—that no action shall be brought " upon any contract or [for] sale of lands, tenements, or hereditaments, or any interest in or concerning them    *    *    *    unless the agreement upon which such action shall be brought, or some memorandum or note thereof shall be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized "— and the analogous provisions of the statutes of the several States, the decisions have been almost uniform, that the agreement is required to be signed only by the party to be charged, and that it is valid and binding upon the vendor when so signed (if in other respects sufficient), without the signature of the other party to the agreement. Upon this point there is a greater degree of uniformity among the

cases than in those involving the construction of most of the other provisions of the statute. The question is fully considered by Chancellor KENT, in *Clason* v. *Bailey*, 14 Johns. 484, and the authorities are reviewed at some length; and although he agreed with Lord Ch. REDESDALE, in *Lawrenson* v. *Butler*, 1 Sch. & Lef. 13, that *on principle* the contract ought to be mutual, and ought not to be enforced in equity unless each party would have the same right, yet he felt himself bound by the authorities, which were then too well settled to be disturbed. The Courts, however, in view of the uniform construction of the Statute of Frauds, that the agreement was valid and binding upon the party by whom it was signed, and in order to work out the requisite mutuality, held that in such cases it was sufficient if the *remedy* was mutual. It was accordingly held from an early day that when the action for a specific performance was instituted by the party who had not signed the agreement, the act of filing the bill made the remedy mutual. (See *Flight* v. *Bolland*, 4 Russ. 298; *Seaton* v. *Slade*, 7 Ves. 265; *Bowen* v. *Morris*, 2 Taunton, 373; *Ld. Ormond* v. *Anderson*, 2 Ball & Beatty, 363; *Palmer* v. *Scott*, 1 Russ. & Mylne, 391; *Martin* v. *Mitchell*, 2 Jac. & Walk. 413; *Shirley* v. *Shirley*, 7 Blackf. 452; *Clason* v. *Bailey*, 14 Johns. 484; 1 Sug. Vend. and Pur. 112.) There are no cases in this Court which bear directly on this question, except *Cooper* v. *Pena*, 21 Cal. 403; but there are several in which the merits of the cause were considered, though the contract of sale was not signed by the purchaser. Such cases, though not express authority on that question, tend to show that the Court did not deem it essential that there should be a mutuality in the contract. In *Cooper* v. *Pena*, the consideration for the land to be conveyed was to be paid by the personal services of the plaintiff; and the Court rightly, and in entire accord with the authorities,

some of which we have above cited, held that as the Court could not specifically enforce the performance of the personal services, the remedy was not mutual. There is no exception to the rule—at least none now occurs to us—that the contract, though signed by both parties, will not be specifically executed at the instance of one party, unless performance on his part can also be compelled. The proposition that specific performance of the contract would not be decreed when the party asking its enforcement could not be compelled to perform it, was decisive of the case, and upon it the case was, in fact, decided; and in our opinion the decision is sustained by the overwhelming weight of the authorities. The exceptions which are stated in some of the cases prove the rule. A suit cannot be maintained by an infant, because he cannot be compelled to perform the contract; but if the infant commence the action after he arrives at the age of majority, specific performance will be decreed, because there is then a mutuality of remedy, and the plaintiff can be compelled to perform on his part. A sale to a married woman furnishes another illustration. She cannot maintain a suit for specific performance, because she cannot be compelled to perform the agreement on her part.

In *Cooper* v. *Pena* the objection on the part of the defendant was that there was a want of mutuality in the agreement—it having been executed only by the defendant—and the form of the objection caused the Court, in some degree, to confound the question of the mutuality of the agreement with that of the mutuality of the remedy, although the Court finally said, that in view of the want of mutuality in the remedy, it was " unnecessary to hold that the position of the parties, as to equitable relief, was determined by the want of mutuality in the beginning." The language of the Court, so far as it intimates that it is essential to the maintenance of the action that the contract be mutual, cannot be sustained without overturning the well recognized construction

of the Statute of Frauds—that the statute is fully complied with, if the agreement or the note or memorandum thereof be signed by the party to be charged, or the party by whom the sale is to be made, as provided by our statute; and without also denying the authority of the long and almost unbroken series of cases, in which the specific performance of contracts, signed by only one party, has been decreed.

Judgment reversed and cause remanded, with directions to overrule the demurrer.

Mr. Justice CROCKETT did not express an opinion.