## JOHNSTON *v.* TRIPPE.[1]

*(Circuit Court, N. D. Georgia. December 19, 1887.)*

1. JURISDICTION—FEDERAL CIRCUIT COURTS—AMOUNT IN CONTROVERSY—AMENDMENT.

Where a bill for the specific performance of a contract for the sale of land is silent respecting the value of the land in controversy, except that, in the contract sought to be enforced, its price or value is fixed at $1,000, an amendment alleging that the present value of the land is $3,000 brings the controversy, as to amount, within the jurisdictional limits of the circuit court, as fixed by the act of March 3, 1887.

2. SPECIFIC PERFORMANCE—MUTUALITY—OPTIONAL CONTRACT.

A written agreement to convey land at the option of the proposed vendee, within a given time and at a certain price, if made upon a sufficient consideration, with full knowledge on the part of the person extending the option that he is bound and the other party is not, is such a contract as, though lacking in mutuality of remedy, will be enforced in equity at the instance of the proposed vendee. When the party holding the option signifies his acceptance within the time limited, and upon the terms stated, the obligation of the contract becomes mutual, and capable of enforcement at the instance of either party.[2]

In Equity. Bill for specific performance by complainant J. L. Johnston against R. B. Trippe, defendant. On demurrer.

*G. A. Howell,* for complainant.

*Hopkins & Glenn,* for defendant.

NEWMAN, J. This is a bill filed by complainant against defendant to enforce the specific performance of a certain conditional or optional contract for the sale of land. The bill, after stating some preliminary correspondence and negotiation between complainant and defendant, relative to the sale of certain land in White county, Georgia, by the latter to the former, alleges that in January, 1887, defendant prepared and executed the following written instrument:

"*Georgia, Fulton County.* This agreement witnesseth, that the undersigned R. B. Trippe, of said state and county, agrees that if said J. Lamb Johnston, of Charleston, S. C., or any one for him, pays or causes to be paid to the said R. B. Trippe, one thousand dollars, on or before January 20, 1888, that the said R. B. Trippe, for himself, his heirs and assigns, covenants and agrees that he will make to the said Johnston good and sufficient title to lots of land numbers 9 and 25, in 3d district, White county, said state. And it is further agreed that if a draft for $50.00 this day drawn by R. B. Trippe, with this option bond attached, is paid at sight, then said R. B. Trippe will make said title, if nine hundred and fifty dollars is paid him on or before January 20, 1888; if said sums of money are not paid within the time mentioned, that is, $50.00 on sight draft and $950.00 within twelve months from this date, then this bond to be null and void; and it is understood that if the balance of one thousand dollars (*i. e.,* $950.00) is not paid by January 20, 1888, the $50.00

[1]Reported by W. A. Wimbish, Esq., of the Atlanta bar.

[2]That equity will not specifically enforce a contract wanting in definiteness or mutuality, see Bourget v. Monroe, (Mich.) 25 N. W. Rep. 514; Hall v. Loomis, (Mich.) 30 N. W. Rep. 374; Moses v. McClain, (Ala.) 2 South. Rep. 741; Recknagle v. Schmalz, (Iowa,) 33 N. W. Rep. 365; Durkee v. Cota, (Cal.) 16 Pac. Rep. 5; Fogg v. Price, (Mass.) 14 N. E. Rep. 741.

paid on sight draft is forfeited to said R. B. Trippe, and that this option bond is null and void, otherwise of full force and effect.

"Witness my hand and seal, this January 20, 1887.
    [Signed]                           "R. B. TRIPPE.

"Witness:
    [Signed]   "J. H. CURTRIGHT, M. L. COHEN."

This instrument was sent, about the time of its execution, by defendant to complainant by mail to his home in Charleston, South Carolina, and received by complainant. Defendant also drew on complainant a sight draft for $50, which was sent, with the foregoing written instrument, to Charleston. His draft was honored and paid at once by complainant, and defendant received the $50. Sometime after this, defendant wrote to complainant, saying he had an offer of $1,500 for the land, and offering, if complainant would release him from his obligation, to return the $50 paid him, and to pay complainant $50 in addition, if the other sale was made. In the same letter defendant stated that the bond sent by him to complainant was not legally binding anyway. Complainant promptly replied, both by wire and letter, to defendant, refusing to release him from his obligation to convey the land in pursuance of the before stated contract. In the same letter in which the complainant refused to release defendant, he instructed defendant to submit his deeds to complainant's attorney, and that, upon their approval by him, complainant would pay the balance, $950. This defendant failed and refused to do, but wrote complainant that he declined to furnish the titles or convey the land in accordance with his contract; and in the same letter inclosed a check payable to his, defendant's, order, and indorsed by him in blank, which he tendered as a repayment of the $50. This letter was received by complainant in Nacoochee, Georgia, on the night of March 17, 1887. On the next day, March 18th, complainant went to Atlanta, the home of defendant, sought an interview with him, and immediately returned to him the $50 check which he had received from him; stating to defendant that he refused to receive it; and defendant now has the check in his possession. Complainant at the same time tendered to defendant $950 in cash, and demanded that defendant make complainant a good and sufficient title to the land in controversy, which tender defendant refused, and refused to convey, and repeatedly refused to carry out his contract with complainant. A tender is made in the bill of $950; and the prayer is for a decree for specific performance against defendant, with an alternative prayer for damages, in the event specific performance cannot be obtained. An amendment has been filed to this bill, which amendment alleges that the property described in the bill, bargained by defendant to complainant, is now worth the sum of $3,000, and also that the damages to complainant resulting from such refusal and the failure of the defendant to perform his contract, exceed $3,000. To this bill a demurrer has been filed, which demurrer is on two grounds: *First*, that this court has no jurisdiction of the subject-matter in the bill stated; and, *second*, that the complainant has not shown a right to any relief against defendant.

The first ground is based upon the fact that the amount in controversy, as shown by the original bill, is not sufficient to give this court jurisdiction; the bill having been filed since the passage of the act of March 3, 1887. This objection seems to be obviated by the amendment since filed, fixing the value of the land at $3,000 and the damages at not less than that sum. There was very little discussion upon this point, in the argument, and it was not strongly urged. The serious and main question in the case arises under the second ground of the demurrer, that the complainant has not shown a right to any relief against defendant. The question made is that this contract between defendant and complainant lacks the element of mutuality, which is necessary to authorize a court of equity to decree a specific performance. That is to say, that, as complainant was not compelled by his contract to take the land and pay defendant the remainder of the purchase money, defendant could not be required to carry out the agreement. There is a general rule of law, undoubtedly, that this element of mutuality must exist to justify enforcement of specific performance. Fry, Spec. Perf. § 286; Wat. Spec. Perf. § 196. It is also true that there are clear exceptions to this rule. In Fry on specific performance it is stated in section 291, as follows:

"The contract may be of such a nature as to give a right to the performance to the one party which it does not give to the other; as, for instance, where a lessor covenants to renew upon the request of his lessee, or where the agreement is in the nature of an undertaking. But the more accurate view of such cases as the first,—perhaps of all that could be treated as wanting mutuality,—seems to be that they are conditional contracts; and when the condition has been made absolute, as, for instance, in the case above stated, by a request to renew, they would seem to be mutual, and capable of enforcement by either party alike."

In Wat. Spec. Perf. § 200, in discussing the matter of exceptions to this general rule, the author says:

"But it is well settled that an optional agreement to convey, or to renew a lease, without any covenant or obligation to purchase or accept, and without any mutuality of remedy, will be enforced in equity if it is made upon proper consideration, or forms part of a lease or other contract between the parties that may be the true consideration for it, though such an agreement can perhaps scarcely be called an exception; for, being in fact a conditional contract, when the condition has been made absolute by a compliance with its terms, the contract becomes mutual, and capable of enforcement by either party. A contract for the sale of real estate, at the option of the vendee only, upon election and notice, may not only be specifically enforced, but the refusal of the vendor to accept the purchase money will not destroy the mutuality, though the vendee could thereupon withdraw his election."

The decisions upon this question have been numerous, and it has been discussed ably and at length by many courts of high authority. The case very generally referred to and relied upon to sustain the rule requiring that a contract must be mutually binding to justify its enforcement, is the decision of Lord REDESDALE in the case of *Lawenson* v. *Butler*, 1 Schoales & L. 13. A careful examination of that case and the argument and reasoning of the Lord Chancellor will show that the decision was put mainly upon the ground that where parties enter into an agreement,

each supposing the other to be bound thereby, and it transpires that one was not bound, such party could not have specific performance of the contract by the other. He says, in concluding the opinion, (page 21:)

"No man signs an agreement but under a supposition that the other party is bound, as well as himself; and therefore, if the other party is not bound, he signs it under a mistake. That mistake might be a ground for relief in equity, but is surely not a ground for specific performance. Under these circumstances, the impression upon my mind is that I must dismiss the bill. This agreement was signed in mistake. It is manifest that Butler could not have executed a lease in compliance with it; and as he could not, it is manifest that this is not the agreement he meant to sign."

From a note to this case, (page 21,) it would seem that the Lord Chancellor was not himself entirely satisfied with the decision, as he proposed that the case lie over until the next day to look into the cases cited, when plaintiff's counsel stated that they were content with a dismissal of the bill without costs, and it was ordered accordingly. These comments upon and citations from this much-quoted case, are not made to question the existence of the general rule alluded to, but to show that its application, even in its origin, was a matter of difficulty, and its extent uncertain.

Counsel for defendant relied in argument here mainly on the cases of *Marble Co.* v. *Ripley*, 10 Wall. 339; *Tyson* v *Watts*, 1 Md. Ch. 1; *Duvall* v. *Meyers*, 2 Md. Ch. 401; and *Peacock* v. *Deweese*, 73 Ga. 570. In the case of *Marble Co.* v. *Ripley*, other questions were made growing out of complex and intricate partnership relations; but one reason why specific performance should not be decreed was want of mutuality. After stating this as a reason why specific performance should be refused in that case, the court proceeds to give what is termed a "still more satisfactory reason for withholding a decree for specific performance." But want of mutuality was undoubtedly recognized as applicable to that case. In the later case of *Butler* v. *Thomson*, 92 U. S. 412, the court, in the opinion, uses the following language: "There may be an offer to sell subject to acceptance, which would bind the party offering, and not the other party until acceptance. The same may be said of an optional purchase upon a sufficient consideration." The court then alludes to a class of cases under the statute of frauds where one party signed a contract and the other did not. The language as quoted seems to me to indicate a recognition by the court of offers to sell subject to acceptance, and optional purchases upon sufficient consideration, as exceptions to this general rule requiring mutuality of obligation in the contract. It would be far from clear that *Marble Co.* v. *Ripley*, even standing alone, should be regarded as controlling in this case; but the language used in the later case of *Butler* v. *Thomson* shows clearly, I think, that that court would not so regard it. The two cases from the Maryland Chancery Decisions referred to may be disposed of with the remark that in neither case cited were the facts at all like the facts that are presented in the case now before this court. In the case of *Peacock* v. *Deweese*, the supreme court of Georgia held that the contract sought to be enforced in that case lacked

the element of mutuality, and stated that as one reason why specific performance would not be decreed. The court also stated, however, that "the agreement is gratuitous, and entirely voluntary on the part of the defendant in error. A court of equity never decrees a specific performance of a voluntary or gratuitous contract. Code, § 3189. Any fact showing the contract to be unjust or unfair or against good conscience, justifies the court in refusing to decree a specific performance. Code, § 3190." The undertaking of the two Dewees in that case was entirely without consideration to them. Peacock agreed to make such tests of the land for the discovery of minerals as were "satisfactory to himself." The two Dewees had their land tied up by this option for six months without receiving any remuneration therefor, and it was evidently the view of the court that the agreement by Peacock to make such tests as were "satisfactory to himself" was not such a consideration as would support the contract. This may be gathered, I think, from the use of the language "voluntary or gratuitous contract." This, then, was an optional agreement to sell, wholly without consideration.

I have thus far given attention principally to the authorities relied upon by the eminent counsel for defendant in this case, without referring to the long line of decisions which, it seems, hold that contracts such as the one before the court will be enforced. In the case of *Fowle* v. *Freeman*, 9 Ves. 351, it was held that an agreement in writing for the sale of an estate was binding if signed only by the vendor, and followed by direction to his attorney to prepare a proper agreement for both parties to sign. In the case of *Ormond* v. *Anderson*, 2 Ball & B. 363, where the court dismissed the bill upon another ground, the following language was used in the opinion:

"An objection has been made to the execution of this agreement, on the ground that it has not been signed by the plaintiff, and that the defendant could not have enforced it against the plaintiff. I am very well aware that a doubt has been entertained by a judge in this court, of very high authority, [referring to Lord REDESDALE, in *Lawenson* v. *Butler*,] whether courts of equity would specifically execute an agreement where one party only was bound. There exists no provision in the statute of frauds to prevent the execution of such an agreement; and Sir James MANSFIELD, who certainly had great experience in courts of equity, lays it down in the case of *Allen* v. *Bennet*, [3 Taunt. 169,] that a contract signed by one party would be enforced in equity against that party, and that such was the daily practice of that court."

He proceeds to say that "in a case were the court finds a party who has been and is endeavoring to obtain some undue advantage, or has been playing what is called 'fast and loose,' the court would not assist him." In the case of *Clason* v. *Bailey*, 14 Johns. 484, the chancellor, after discussing, among other cases, those I have just cited, concludes thus:

"I have thought, and often intimated, that the weight of argument was in favor of the construction that the agreement concerning lands, to be enforced in equity, should be mutually binding; and that the one party ought not to be at liberty to enforce, at his pleasure, an agreement which the other was not entitled to claim. It appears to be settled (*Hawkins* v. *Holmes*, 1 P. Wms.

770) that though the plaintiff has signed the agreement he never can enforce it against the party who has not signed it. The remedy, therefore, in such cases is not mutual. But, notwithstanding this objection, it appears from the review of the cases that the point is too well settled to be now questioned."

In a later case in New York—*In re Hunter*, 1 Edw. Ch. 1—the vice-chancellor uses the following language:

"In the next place, it is said the covenant to sell is not mutual, the lessee not being bound to purchase, and that, as this is a ' one-sided ' agreement, the court will not decree a specific performance. The cases of *Parkhurst* v. *Cortlandt*, 1 Johns. Ch. 282, and *Benedict* v. *Lynch*, Id. 370, have been referred to as establishing this point. Chancellor KENT there intimated that such was the rule; but in a subsequent case in the court of errors—*Clason* v. *Bailey*, 14 Johns. 484—he had occasion to review that opinion, which he found to be erroneous, and admits that the point is too well settled the other way to be questioned. The court may, therefore, in a proper case, where there is a covenant on one side, and no mutuality, decree a performance. Besides, in a case like the present, it may be peculiarly proper. The rent may have been fixed at $500 as an inducement to the power of purchasing the property. This is a fair inference."

In the case of *Van Doren* v. *Robinson*, 16 N. J. Eq. 256, it is held that "the general principle is that where the contract is incapable of being enforced against one party, that party is equally incapable of enforcing it against the other. But the principle does not apply where the contract, by its terms, gives the one party a right to the performance, which it does not give to the other party." And in the case of *Hourully* v. *Warren*, 18 N. J. Eq. 124, after stating the general rule as the existence of mutuality, and that unilateral or optional contracts are not favored in equity, the court proceeds:

"But modern authorities have narrowed this doctrine down to cases in which there is no other consideration. And it is now well settled that an optional agreement to convey, or renew a lease, without any covenant or obligation to purchase or accept, and without any mutuality of remedy, will be enforced in equity, if it is made upon proper consideration, or forms part of a lease or other contract between the parties, that may be the true consideration for it."

A number of cases are then cited by the court to sustain this view, among them the cases I have just referred to. The language last quoted seems to me to be a very clear statement of the correct rule in this matter. In *Smith's Appeal*, 69 Pa. St. 474, the matter before the court being an optional contract for the sale of land, it was held that the contract would be enforced. In the case of *Rogers* v. *Saunders*, 16 Me. 92, 33 Amer. Dec. 635, the court cites the decision of Chancellor KENT in *Clason* v. *Bailey*, and states that this appears to be now the generally received doctrine. In *Vassault* v. *Edwards*, 43 Cal. 458, it is held that—

"A proposal to sell real estate, reduced to writing and signed by the vendor alone, in which he recites that he has sold to the vendee the land for a price named, and has received a certain sum as a deposit, as part payment, which the vendor was to refund if the title was rejected or bad, the sale to be subject to a search of and approval of title, the vendee to have twenty days for the examination of the title, is a valid contract of sale entered into between the parties."

To the same effect is the case of *Schroeder* v. *Gemeinder*, 10 Nev. 355. The court, after stating that there are many exceptions to the rule in the cases, as to mutuality, says:

"We think it may now be considered as well settled by all, or nearly all, of the modern authorities, that a court of equity, in actions for the specific performance of optional contracts and covenants to lease or convey land, will enforce the covenant, although the remedy is not mutual, provided it is shown to have been made upon a fair consideration, or where it forms part of a contract, lease, or agreement, which may be the true consideration for it."

Entering into the discussion of this question, in many of the cases, is that part of the statute of frauds providing that contracts for the sale of land must be in writing, signed by the party to be charged thereby, or some person by him lawfully authorized. (This law as codified in Georgia, is in section 1950, Code 1882.) It is held in some of these cases that the question should be controlled by the language of the statute just quoted; and that, as the contract need be signed by only one party, viz., the party to be charged thereby, it is only necessary that he should be bound. It seems to me, however, that the question of mutuality is one distinct and apart from any question that might arise under the statute of frauds. It is a matter separate from, if not over and above it, and I have considered it in that view. I think it is settled by the above authorities, and others that might be cited, that where an owner of land gives another, for a sufficient consideration, an option or privilege to purchase the land within a given time, in writing, with full knowledge of the fact that he is bound and the other party is not, it is such a contract as will be enforced in equity at the instance of the party holding the option. Does such a contract indeed lack mutuality? The seller, for fair consideration, agrees to give the proposed purchaser a certain fixed time in which to make the contract mutual, by acceptance of the offer to sell. If he accepts within the specified time, both parties are fully bound.

Now, as to this case. Here, for a reasonable consideration, the sum of $50, the defendant agrees that the complainant shall have the privilege of buying his land within a year; that is, the defendant sells to him for $50 the privilege of purchasing the land within a year. That contract, the sale by defendant to complainant of the privilege of purchasing, is executed by the payment by complainant of the sum agreed upon. The remainder of the contract is conditional upon the complainant's accepting within a year the continuing offer of the defendant to sell him the land. I see no reason why a court of equity should not enforce such a contract. On the contrary, it seems to me it would be inequitable to refuse its enforcement. I am clear, therefore, that this case does not come within the class where lack of mutuality will prevent enforcement of the contract, and that it does come within a well-recognized exception to that rule, of optional sales upon fair consideration. This case is considered now, of course, upon the facts as stated in the bill. How it may be affected by what the defendant can hereafter show must be a matter for future consideration. My conclusion is that the demurrer must be overruled on both grounds, and it will be ordered accordingly.