GEORGE H. TOUSEY AND ANOTHER, APPELLANTS, *v.* GEORGE A. ETZEL AND OTHERS, RESPONDENTS.

SPECIFIC PERFORMANCE.—BOND FOR DEED.—MUTUALITY.—*Semble* that a bond for a deed providing that if the obligors, the vendors, shall make a good and sufficient deed to the obligees, the vendees, provided vendees have made certain payments on the real property at certain times, then the obligation to be void, or if said vendees shall not make payments as therein provided, then the money already paid shall be forfeited and the bond become void; *held* that the forfeiture for non-payment was at the option of the vendees and not the vendor, that such contract had no mutuality and could not be specifically enforced against the vendees.

BROKER.—COMMISSION ON REAL ESTATE SALE.—VARIANCE.—A contract to pay a broker a certain commission upon a sale of real

estate in consideration of the broker furnishing an absolute purchaser, is not satisfied by the furnishing of a purchaser who is willing to execute a bond for a deed, to be signed by the vendors, wherein the making of the payments for the property is wholly optional with the purchaser.

NEW TRIAL.—CONFLICTING EVIDENCE.—DISCRETION OF COURT.— Where the lower court has granted a new trial upon conflicting evidence, because the verdict is against the weight of the evidence, in the absence of any showing that the court has abused its discretion, such ruling will be affirmed.

APPEAL from an order granting a new trial of the district court of the third district, Hon. Charles S. Zane, judge. The opinion states the facts.

*Messrs. Marshall and Royle,* for the appellants.

The brokers did furnish a purchaser, and the parties did agree. The purchasers offered a contract in the bond, which when signed and acted upon, became operative and could be specifically enforced. *Schroeder* v. *Gemeinder,* 10 Nev. 363; *Hall* v. *Center,* 40 Cal. 63; *La Rue* v. *Groezinger,* 84 Cal. 289; *Johnson* v. *Trip,* 33 Fed. Rep. 530; *Kelsey* v. *Crowther,* 7 Utah, 513; *Borel* v. *Mead,* 2 Pac. Rep. 222. The evidence shows that the parties did agree upon the terms, but after agreeing found they could not sign the contract, because there was already a bond of the mine, and then Judge Loofbourow, their attorney, seized the pretext that the contract was not binding on the purchasers. Hence the brokers did perform their part.

*Mr. Parley L. Williams,* and *Messrs. Loofbourow and Kahn,* for the respondents.

MINER, J.:

Plaintiffs brought this action upon a verbal contract, alleging that the defendants agreed with plaintiffs that if said plaintiffs would find and produce to them a purchaser

for the North Star mining claim, upon terms that should be agreed upon between themselves and said purchaser, defendants would pay to the plaintiffs 10 per cent. of the purchase money that said purchaser should agree to pay as compensation for their services in the premises; that, in pursuance of such agreement, the plaintiffs found such purchaser in Rice and Gelder; that they produced Rice and Gelder to the defendants, and that, so brought together, Rice and Gelder and the defendants agreed upon the price and terms of sale; that the price so agreed upon was $20,-000; that plaintiffs' commission thereon was $2,000, which, though demanded, had not been paid. The defendants answered, denying the allegations in the complaint. A jury trial then was had, and a verdict rendered for the plaintiff in the sum of $2,000. The defendant entered a motion for a new trial, based upon all the statutory grounds. The principal ground relied upon was that the evidence was insufficient to justify the verdict. Upon a full hearing, the court below made an order granting the defendant a new trial, from which order appellants (plaintiffs below) appeal. Several witnesses, including the plaintiffs, were sworn on their behalf, and from such testimony it appears that plaintiffs were to find purchasers for the property at a price of $20,000, on terms to be agreed upon by the defendants; that on Monday night, October 27, 1890, they effected a meeting between the alleged purchasers, Rice and Gelder, and the defendants, at the Continental Hotel, and that at that meeting they agreed upon everything with respect to the sale; that said Rice and Gelder agreed absolutely and unconditionally to pay the sum of $20,000, on the following terms: $500 cash; $4,500 on or before 30 days; $8,500 on or before 5 months; and the balance, of $6,500, in June. And it was then agreed that Gelder should put said contract in writing, and have it ready to be signed by all the parties next morning at 10 o'clock.

The understanding was that the sale was to be absolute, and not merely an option on the property. In accordance with this arrangement, the parties met again on the following morning, October 28, 1890, and Gelder presented the writing which he had drawn up. Such proposed contract reads as follows:

"Know all men by these presents, that George A. Etzel, D. E. Moore, John C. Weeter, and Joseph Armstrong, of the county of Salt Lake, parties of the first part hereto, are held and firmly bound to George Arthur Rice and William Gelder, who are styled the parties of the second part hereto,. in the sum of twenty thousand (20,000) dollars lawful money of the United States, and the further sums of money which said Rice and Gelder may have expended in carrying out the obligations hereinafter set forth to be performed by said Rice and Gelder, said sums of money to be paid to said George Arthur Rice and William Gelder, their executors, administrators, or assigns, for which payments well and truly to be made the said parties of the first part bind themselves, heirs, administrators, or assigns, firmly by these presents. Sealed with our seals, and dated, this 28th day of October, A. D. 1890. The condition of the above obligation is such that if the above-bounden parties of the first part shall on or before the said first day of May, 1891, make and execute to the parties of the second part hereto, or their assigns, and deliver the same to the American National Bank of Salt Lake, in Salt Lake City, to be held in escrow, subject to the payment of the sum of eight thousand five hundred (8,500) dollars, payable on or before the 16th day of June, A. D. 1891,—provided the said Rice and Gelder shall have on or before the first day of November, A. D. 1890, paid to the parties of the first part the sum of five hundred (500) dollars, and on or before the 28th day of November, A. D. 1890, paid the further sum of four thousand five hundred

(4,500) dollars, and on or before the 1st day of May, A. D. 1891, pay into the American National Bank of Salt Lake the sum of $6,500—subject to the delivery of certain deeds hereinafter set forth,—a good and sufficient deed for conveying to the said Rice and Gelder or assigns said deed, assuring the title free from all incumbrances, and giving to said Rice and Gelder all right, title, and interest, estate, claim, and demand, both in law and in equity, as well in possession as in expectancy of, in, or to that certain mining claim situated in the Silver Lake mining district, Utah county, Territory of Utah, to wit, the mining claim known as 'North Star,' and known as 'Lot No. 39' of the United States patent surveys in said Silver Lake district, said claim being 600 feet wide by 1,500 feet long, and more particularly described by metes and bounds in said U. S. patent survey No. 39. Then this obligation shall be void, but otherwise to be and remain in full force and effect. It is further agreed that said Rice and Gelder shall at once enter into possession of said mining claim, and shall keep a force of men not less than four in number upon said property during the life or existence of said bond, and shall proceed to develop the same in such manner as to them may be deemed best, taking out such mineral as they may see fit, and use ordinary caution in taking care of such mineral, but shall not remove any mineral from said claim without the consent of the parties of the first part hereto, except such samples as may be needed to gain a knowledge of the value of the mineral extracted, and for such work or development or supplies furnished said Rice and Gelder shall be responsible. Now, if said Rice and Gelder shall fail to keep said force of men at work (unless prevented by causes which they cannot control), or shall fail to pay said sums of money at the times heretofore stipulated, then this obligation shall become void, and

the money paid by said Rice and Gelder shall become forfeit to the parties of the first part."

The plaintiffs testify that this contract was read over to the defendants, and they expressed their satisfaction with it, except they wanted to have it presented to their attorney before signing it, to see if it was legal and right. On the other hand, the defendants gave testimony tending to show that, when such contract was read over, two of them expressed their disapproval of it, and desired to show it to their attorney, and, upon doing so, found and were advised that it was not a contract of purchase and sale; that it was simply an. option contract without mutuality; that it did not bind Rice and Gelder to pay anything, but did bind the defendants to convey. The defendants refused to accept the contract as the one agreed upon. Rice and Gelder did not propose to give any other, whereupon the matter was abandoned, and thereupon this action was brought to recover the amount of commission claimed to be due the plaintiffs.

The principal question to be determined is, did the plaintiffs produce a purchaser or purchasers able, ready, and willing to purchase the property upon the terms agreed upon by the defendants and Rice and Gelder? If they did, then they were entitled to their commission, and to recover, even though the vendors refused to go on and perfect the sale, and even though they could not give a good title to the mine agreed to be sold. *Phelps* v. *Prusch*, 83 Cal. 626, 23 Pac. Rep. 1111; *McGavock* v. *Woodlief*, 20 How. 221. Plaintiffs claim, and the testimony shows, that the terms agreed upon were an absolute sale of the property for $20,000—$500 to be paid down in cash; $4,500 on or before 30 days; $8,500 on or before 5 months; and the balance, $6,500, in June.

The contract of sale which Rice and Gelder sought to

have executed as a fulfillment of such agreement differs widely from the terms of the agreement made, and cannot be considered or treated as an acceptance or fulfillment of it.   An offer on the part of the purchasers to sign that contract, and no other, could not be construed as placing them in the position of purchasers who were able, ready, and willing to purchase upon the terms agreed upon, and thereby place the plaintiffs in a position whereby they could claim that they had performed their contract, and were therefore entitled to their commission.   By the terms of the proposed contract, no present consideration moved from Rice and Gelder to the defendants.   The $500 agreed to be paid down in cash was by the term of such writing made payable at the option of the purchasers on November 1st.   The further payments were to be made only at the option of Rice and Gelder, and the contract or option was to become void if Rice and Gelder did not make the payments, or if the defendents failed to furnish and convey the title to the mine; and if Rice and Gelder failed to keep four men at work at the mine, or failed to pay said sums of money at the time stipulated, then the whole obligation was to become void, and the money paid by Rice and Gelder, if any, should become forfeited to the parties of the first part.

From the proposed agreement, it is difficult to see wherein Rice and Gelder agreed to make the purchase, or wherein they became bound to purchase the mine, pay any money therefor, or do anything that would amount to a moving consideration for the promise they sought to obtain and enforce against the other party as a basis of plaintiff's action; and while it may be true that where an owner of land gives another, for a sufficient consideration, an option or privilege to purchase the land within any given time, in writing, with full knowledge of the facts, he is bound, and the other party is not, such contract may be enforced

in equity at the instance of the party holding the option, as held in *Johnston* v. *Trippe,* 33 Fed. Rep. 536. Yet this principle cannot be held to apply to the case at bar, where no consideration is paid or agreed to be paid as a consideration for the option, and where no mutuality exists between the parties whatever. By the terms of this proposed agreement, Rice and Gelder did not agree to buy the mine. They did not agree to pay for the mine. They made no payment on the mine. They did not agree to work the mine, except at their option. They made no promise to do anything that they did not wish to do, but did contract that they should not be bound to fulfill any part of the agreement; and, if they failed to pay the money or to work the mine on their part, then the contract should be wholly void. The contract was so carefully worded as to protect Rice and Gelder from any loss or liability at their option, and at the same time to hold the defendants to full responsibility at their option, but without any consideration whatever moving to them for their agreement.

Supposing the contract had been signed by the parties on October 28, 1890, and immediately thereafter, before any money was paid, Rice and Gelder should have seen fit to repudiate it, would the defendants have any means left them to collect the $20,000, or any part of it, under such contract? We think not. The contract gave the purchasers power to render it absolutely void by failing to carry out its terms. All they had to do was to refuse to do the work or pay the money, and the contract was at an end. A proposal to accept, or an acceptance upon terms varying from those offered, is a rejection of the offer. *Bank* v. *Hall,* 101 U. S. 43. But it is not necessary to discuss this part of the case further. It is apparent that the contract, as embraced in the proposed agreement which Rice and Gelder sought to obtain from the defendants—and the

only contract which they proposed to make—was not an acceptance of the offer of sale as made by the defendants on the previous Saturday evening. There was no consideration moving from Rice and Gelder to the defendants sufficient to support their promise to convey the mine, and the agreement, if made, lacked that element of mutuality which is necessary to authorize a court of equity to decree a specific performance; that is, as Rice and Gelder were not compelled by their contract to take or pay for the mine, the defendants could not be compelled to carry out their agreement. This element of mutuality must exist to justify the enforcement of specific performance. It is true that there are exceptions to this rule, but they do not arise in this case. See Fry, Spec. Perf. § 286; Wat. Spec. Perf. §§ 196–291; *Marble Co.* v. *Ripley,* 10 Wall. 339; *Lawrenson* v. *Butler,* 1 Schoales & L. 13; *Butler* v. *Thomson,* 92 U. S. 412; *Clason* v. *Bailey,* 14 Johns. 484; *Van Doren* v. *Robinson,* 16 N. J. Eq. 256; *Hawralty* v. *Warren,* 18 N. J. Eq. 124.

It is claimed, however, that on the following morning the defendants accepted the proposed written agreement as embodying the agreement previously entered into, and that they verbally agreed to its terms, and therefore the terms of sale were agreed upon, so as to justify a recovery in this action. As to what took place when the proposed agreement was submitted for the consideration of the parties on the following morning the witnesses all differ. Their testimony is conflicting and contradictory. One of the grounds set out in the motion for a new trial was the insufficiency of the evidence to justify the verdict. It does not appear on what ground the order for a new trial was granted. If it was granted on the ground of insufficiency of the evidence to justify the verdict,—as we presume it was,—it is well settled that a motion for a new trial on such ground

22

is addressed to the sound legal discretion of the trial court, and that such an order will not be reversed on appeal, unless it appears that there has been manifest abuse of such discretion. *Newton* v. *Brown*, 2 Utah, 126; *Davis* v. *Railway Co.*, 3 Utah, 218; *White* v. *Railroad Co.*, 8 Utah, 56; *Pierce* v. *Schaden*, 55 Cal. 407. We can discover no abuse of discretion in the trial court in making the order for a new trial. The order of the district court in granting a new trial is affirmed, with costs.

BARTCH, J., and SMITH, J., concurred.