# JOHN DUCIE ET AL., APPELLANTS, *v.* THOMAS FORD, RESPONDENT.

MINES AND MINERALS— *Verbal agreement — Statute of Frauds — Part performance.* —The plaintiffs sought to enforce the specific performance of a verbal agreement, alleged to have been entered into with the defendant. It appeared from the pleadings that the parties to the action claimed the same quartz lead under conflicting locations, and had agreed that the defendant should first obtain a patent to the mine, and then execute a deed to a one-half interest to the plaintiffs. The expense was to be borne equally. As part performance the plaintiffs urged that they had surrendered possession of the mine to the defendant, had abstained from filing an adverse claim in the United States land office, and had paid their share of the expense of the patent. *Held*, that said agreement was within the Statute of Frauds (Comp. Stats. div. 5, §§ 217, 219); that relinquishing a disputed possession, and simply abstaining from filing an adverse claim, constituted no part performance; and that even a payment of their share of the expenses of the patent could not avail plaintiffs, as a part performance, for the reason that there was no such mutuality of obligation in the agreement as would have enabled the defendant to compel such payment had the plaintiffs seen fit to refuse it.

CIVIL PRACTICE— *Statute of Frauds — Sufficiency of complaint under, raised by demurrer.* —The complaint set up a contract within the Statute of Frauds, and relied upon part performance to satisfy the statute. A demurrer was filed. *Held*, that the sufficiency of the complaint under the Statute of Frauds was properly presented by demurrer.

PLEADING— *Specific performance — Ambiguity and uncertainty.* —In an action for the specific performance of an agreement concerning a mine, the plaintiffs claimed that they had paid their share of the purchase money. The complaint failed to aver the value of the property, the price plaintiffs were to pay on account of the same, and the dates or amounts of any payments made. In one portion it was alleged that the plaintiffs had made payment from time to time, and in another that they were ready and willing to pay whatever might be due by them. *Held*, that the complaint, as to payment, was uncertain and insufficient.

MINES AND MINERALS— *Title to mining claim — Pleading same.* —The complaint set forth that the plaintiffs and defendant claimed the same mine, and that under an agreement between them, defendant had obtained a patent. The action sought to enforce the specific performance of the agreement. Plaintiffs in averring their title failed to allege citizenship, and the performance by them of the necessary annual assessment work upon the mine. *Held*, that in a case such as the one at bar, and in an action for the determination of adverse locations to the same mining claim, a complaint should contain the following averments, which are essential: Discovery, marking the boundaries of the claim, filing a declaratory statement, with a proper description of the claim by reference to a natural object or permanent monument, possession, and title from the time of discovery, the performance of the annual assessment work required by law, and that the locator was a citizen of the United States, or had declared his intention to become one.

*Appeal from the District Court, Silver Bow County.*

## STATEMENT.

The plaintiffs in this action sought to enforce the specific per-

formance of a verbal agreement. They claimed the defendant
had agreed to deed to them an undivided one-half interest in a
certain mine, upon his obtaining a United States patent to the
same, in consideration of their abstaining from filing an adverse
claim to his application for such patent, and paying half the
expenses of procuring it. They averred part performance of the
agreement. A demurrer to their complaint being sustained in
the District Court, and judgment thereupon rendered in favor
of the defendant, plaintiffs appealed.

*William Scallon,* for Appellants.

The demurrer to the complaint is on two grounds: Insuffi-
ciency, in that it alleges an agreement within the Statute of
Frauds, but no part performance sufficient to take the case out
of the statute, and also ambiguity. The defendant having
specified the grounds of insufficiency, no other points but those
thus presented need be argued. (*Lopez* v. *Cent. Arizona Mining
Co.* 1 Ariz. 464.) The plaintiffs claim that the part perform-
ance is sufficient, if the case be held to have been within the
statute; and further that the case presented is one of an implied
trust. The complaint shows an entire performance of the agree-
ment, except on the part of defendant, in failing to convey to
them, plaintiffs' one-half interest. The defendant obtained a
patent for the land. By knowingly setting up an unfounded
claim, and by means of his verbal promises, the defendant was
enabled to acquire the legal title, and having thus obtained the
title, fraudulently retains the land as absolutely his own. By
reason of their compliance with their agreement, and their reli-
ance upon the defendant, the plaintiffs' position has been so
altered that it is impossible to restore them to their former con-
dition, or to compensate them. The defendant has obtained all
the benefits of the agreement, and now fraudulently seeks to
retain the same exclusively for himself, and to use the statute as
a cover for his fraud. This presents a proper case for the inter-
vention of a court of equity, upon familiar equity principles:
(Pomeroy on Contracts, §§ 96, 103, 104, et seq; § 144, and note
on p. 206, and cases there cited; Wood on Statute of Frauds,
§§ 481, 482, 488; Fry on Specific Performance, 3d Am. ed.
§§ 553–580, and notes; *Ryan* v. *Dox,* 34 N. Y. 307; 90 Am.

Dec. 696; *Hidden* v. *Jordan*, 21 Cal. 92; *Sandfoss* v. *Jones*, 35 Cal. 481; *Gardner* v. *Randell*, Tex. April, 1888.)

*Thomas L. Napton*, for Respondent.

None of the alleged agreements are in writing; they are uncertain in their terms, and no part performance is alleged with any certainty. The relinquishment of title by plaintiffs is not in *writing*, and they were never induced to withdraw any *adverse claims already filed*, but only *abstained* from filing one. Whatever amount of money they paid they *do not state*, nor the time of its payment. Nor does the *contract* call for any money, and if they paid any, the *sum* is not stated, or the time, or place of payment. This uncertain verbal agreement was made in 1881; patent was procured in 1886; suit commenced in 1887. Can such an agreement be enforced after such a length of time? This is not such a contract as the court will enforce. (See *Ryan* v. *Dunphy*, 4 Mont. 342; *Williams* v. *Morris*, 95 U. S. 455–457; *Purcell* v. *Miner*, 4 Wall. 513.) The patent shuts off such equitable claims, unless there is a valid contract in writing between the patentee and the party who claims an interest. (*Gibson* v. *Chouteau*, 13 Wall. 92.) A resulting trust must grow out of the *facts existing* at the *time* of the issuance of the patent to defendant, and cannot arise from a verbal agreement that the purchase should be for the benefit of plaintiffs. (*Hunt* v. *Friedman*, 63 Cal. 510, and authorities there cited; Perry on Trusts, 3d ed. §§ 133, 134, 135.)

LIDDELL, J.—The complainants allege that in 1878 they discovered and located a mining claim known as the "Figi," situated in the county of Silver Bow, in what is known as the "Summit Valley Mining District"; that the necessary notice and declaratory statement were made, as required by the federal and territorial laws, and that they were in the peaceable possession of the premises until the 15th of March, 1881; that pending their ownership and possession the "defendant was about to proceed to procure" a patent from the government for the same land, under a pretended location and claim designated as the "Odin Lode," whereupon the plaintiffs notified the defendant that they possessed and owned the land under and by virtue of

their location of the Figi Lode; that the defendant, well
knowing that he could not obtain a patent for the premises if
the plaintiffs filed an adverse claim, entered into the following
verbal agreement with the complainants: They were to abstain
from filing any adverse claim, and relinquish possession of the
premises, and the defendant was to procure the patent for the
mine, and afterwards transfer to them an undivided one-half
interest in the property. The purchase was to be made con-
jointly, but in the name of the defendant, who was to act as
agent and trustee for the plaintiffs to the extent of a half interest,
as before stated, and, upon demand, was to execute to them a con-
veyance therefor. They further aver that this agreement was
carried out in good faith on their part by delivering possession
of the premises, and by abstaining from filing any adverse claim,
thereby permitting and enabling the defendant to procure a pat-
ent for said premises; and that thereafter, from time to time,
they paid to the defendant their share of the purchase price.
That on or about the 15th of May, 1881, the defendant obtained
the final receipt from the land office for the purchase price of the
land; and on the 1st of February, 1886, he obtained the gov-
ernment patent for the mine, which is carefully described in the
complaint. They further set forth that on the 2d of August,
1886, they made a demand on the defendant for a title to half
the premises; but he refused to comply, and claimed to be the
owner of the entire property. In addition to these averments,
they set forth their ability and willingness to pay whatever may
be due by them towards procuring a patent, or on account of the
agreement; but the defendant refuses to accept anything, or to
say how much is due by the plaintiffs. They aver bad faith and
fraud on the part of the defendant, and, because it is impossible
to restore them to their original circumstances and position, they
pray for an order decreeing them to be the owners of a half
interest in the property, and for a specific performance, and for
an accounting for rents, issues, and profits. To this complaint
the defendant demurred, for the reason: (1) That it does not state
facts sufficient to constitute a cause of action; (2) that if there
is such a contract, it is null and void for being within the Stat-
ute of Frauds; (3) that the complaint does not set forth part
performance; that it is ambiguous and uncertain in this: that it

does not show how much, if anything, they have paid defendant, nor how much they were to pay, or are willing to pay; and it is contradictory in that it alleges a withdrawal of adverse claims, and at another time, that none were filed; and further, that it alleges a payment to the defendant at different times of their share of the purchase money for the patent; and in another place that they were willing to pay whatever may be due by them towards procuring the patent, and carrying out the agreement. The demurrer being sustained, the plaintiffs elected to stand upon their complaint, and appeal from a judgment rendered accordingly in favor of the defendant.

Possession and ownership of land have always been a matter of so much importance to the peace and happiness of society that the law-maker has considered it peculiarly deserving of his care. Particularly was this the case in England, from whence we derive our Statute of Frauds; which was not only enacted to prevent frauds and perjury, but was also intended to place the title to real estate beyond the uncertainty of parol evidence, either on account of the defects of memory, or the interest, whims, and caprices of witnesses. So in all the States, we find some corresponding law upon this subject; while the territorial legislature has declared in unmistakable language that every contract for an interest in lands shall be void, unless the contract, or some note or memorandum thereof expressing the consideration, be in writing, and signed by the party leasing or selling. (Comp. Stats. § 219, p. 652.) Section 217 is even more sweeping in its terms. It declares that no estate or interest in land, other than leases for the space of one year, shall hereafter be created, granted, or assigned, surrendered, or declared, unless by act or operation of law, or by deed or conveyance in writing signed by the party, or his lawful agent, granting, creating, or assigning, surrendering, or declaring the same. The wisdom of such a law is manifest, but never more apparent than in the present instance; for, notwithstanding the plain and emphatic terms of the statute, we find the parties to this litigation ignoring the law, making verbal contracts for an estate in lands, differing between themselves as to its terms, and appealing to the courts for relief from embarrassments created by their own acts.

The complainants base their right of action upon a resulting trust in their favor created by operation of law; but, under the pleadings as presented in the record, we are only required to pass upon the sufficiency of the complaint to take the case out of the Statute of Frauds, and to sustain the equitable prayer for a specific performance. Inasmuch as contracts within the Statute of Frauds are not illegal, but merely voidable, the sufficiency of the complaint is properly raised by a demurrer, a practice which is now considered well settled, though its propriety has frequently been doubted. (Story on Equity Pleadings, § 503; Browne on Statute of Frauds, §§ 508, 509.) Plaintiffs rely upon these points especially to take the case out of the statute: (1) Abstaining from filing an adverse claim,. and relinquishing possession to the defendant. (2) The fact of having paid their share of the purchase price to defendant after he obtained the patent. (3) That it is impossible to restore them to their former situation, and therefore a specific performance is necessary to protect them from irreparable injury.

A careful examination of the complaint will show very plainly that the plaintiffs and defendant were each claiming adverse possession and ownership of the same mining claim or ground; and when the complainants, as they allege, relinquished their right of possession, they conferred no additional or new right upon the defendant which he was not already claiming to exercise and to be in possession of. Relinquishing a disputed possession, and abstaining from prosecuting an adverse claim which was never filed, do not show the parties to be in a position different from that which they might have occupied if there had been no contract made. The plaintiffs at best, and according to their own showing, refrained from exercising a litigious right, and relinquished a precarious and doubtful possession. Obviously these acts were merely ancillary or preparatory to the main verbal contract, which was that the defendant should patent the mine, and then sell the complainants a half interest. The case is not nearly so strong for the complainants as where the purchaser of lands, under a verbal contract, has bound himself on the faith of that contract to make a lease of the land to a third party, and his so doing is not regarded as part performance. (*Whitchurch* v. *Bevis,* 2 Brown Ch. 559.) So, also, it has been

held, in *O'Reilly* v. *Thompson*, 2 Cox, 271, that where the defendant agreed with the plaintiff to convey land to him upon his procuring a release from another person, which the plaintiff accordingly did at much expense, it was not part performance, but merely an act preparatory to the agreement. Before parol evidence can be introduced, there must be shown a part performance; and the acts relied upon for that purpose must be such as unequivocally prove the contract alleged, for if they can otherwise be accounted for they do not prove a sale. (Browne on Statute of Frauds, §§ 454, 455; Roberts on Frauds, 155; *Purcell* v. *Miner*, 4 Wall. 513.) We have no difficulty in holding that refraining to prosecute an adverse claim which was never filed, and relinquishing a disputed mining claim, do not constitute a part performance of a verbal contract, whereby the defendant was to procure a patent to the mine, and transfer a half interest to the complainants. Such acts may be accounted for in many ways, and by themselves do not in any way tend to prove the main contract. Under the authorities referred to, it would seem that the part performance must be of the contract to sell and convey; and acts merely introductory or preparatory to the defendant's obtaining the title or patent do not fall within purview of the law of part performance.

One other feat is relied on by the complainants as showing part performance, and that is the allegation of payment to the defendant of their share of the purchase money after he had obtained the patent. On this point the complaint is ambiguous, uncertain, contradictory, and wholly insufficient. In one place it alleges having paid complainants' share of the purchase money to defendant, and in another it alleges an ability and willingness to pay their share of the expense of procuring the patent, or on account of the agreement, if defendant will accept the same, and state how much they owe. Nowhere in the complaint do the plaintiffs state the amount or date of any payments to the defendant, the value of the property, nor what moneyed consideration they were to pay for a half interest in the property. The complaint is silent as to the money with which the purchase was to be made; and it distinctly alleges that the purchase was made by the defendant, and it is equally clear that no money of the plaintiffs was ever used in making the purchase.

Taking the most favorable view for the plaintiffs, the allegations on this point are wholly insufficient to take the case out of the statute; for "by an unbroken current of authorities, running through many years, it is settled too firmly for question that payment, even to the whole amount of the purchase money, is not deemed part performance, so as to justify a court of equity in enforcing the contract." (Browne on Statute of Frauds, § 461, and authorities cited; *Purcell* v. *Miner*, 4 Wall. 513.)

Upon the allegations of the complaint we fail to see any mutuality of obligation by which the defendant could have compelled the plaintiffs to contribute had the venture been unprofitable. This feature of the contract must be made to appear whenever a decree for specific performance is sought, or else the relief will be denied. "A party not bound by the agreement itself has no right to call upon the court to enforce performance against the other contracting party by expressing his willingness in his bill to perform his part of the agreement." (*Mayger* v. *Cruse*, 5 Mont. 497; Pomeroy on Specific Performance, §§ 163, 164; *Ryan* v. *Dunphy*, 4 Mont. 354.) In the last-mentioned case, it was held that a verbal agreement for the sale of real estate is void under the Statute of Frauds in Montana; and a specific performance will not be decreed when there is no mutuality of remedy and obligation. In suits for specific performance, the party complaining must not only show the acts relied on as part performance, his willingness and ability to perform his part of the contract, but it must also appear that his position is such that an action at law for damages will not afford him adequate relief. (Browne on Statute of Frauds, § 452.) We have many authorities to the effect that money paid in part is not deemed part performance, and may be recovered back; thereby showing that the plaintiff is not without his remedy. (Roberts on Frauds, 134; Meyer's Fed. Dig. "Equity," § 123, and authorities there cited; *Purcell* v. *Miner*, 4 Wall. 513.) The number of conflicting authorities on this question of specific performance is only known to the investigator, and is almost endless in variety and nice shades of distinction. In fact, to such an extent do they differ that a question like that under consideration may be decided either way, and on very respectable

authority. But in such a labyrinth of legal lore, it is our manifest duty to give effect to the plain and obvious construction of the statute; and in doing so it is to the interest of society that there should be as little refinement upon the law as possible; for the more fixed and certain the rule, the easier it is for the individual to square his conduct in such a way as to entitle him to the protection of the law.

Finally we come to consider whether a cause of action is sufficiently set forth in the complaint. In stating their case, the plaintiffs should allege every fact which it was necessary for them to prove in order to have succeeded in their adverse claim, had they filed one. It is not enough for the complaint to allege that the mining laws had been complied with, for such an averment is merely a legal conclusion; and so, also, is the allegation of the right of possession and ownership of the claim in dispute. (*Meyendorf* v. *Frohner,* 3 Mont. 323; *Payne* v. *Treadwell,* 16 Cal. 221.) It is for the court to say, from the facts stated and proven, whether or not the law has been complied with to that extent which would have entitled the complainants to the patent. In other words, it was not only necessary for the complaint to show that the plaintiffs made the discovery and location, marked the boundaries of the mine, filed their notice and declaratory statement, with proper description with reference to some natural object or permanent monument, and that they were in possession as owners from the time of discovery; but it was indispensable and material for them also to set forth in their complaint that they were either citizens of the United States, or had filed their intention or declaration of becoming so; and that up to the time of the application of the defendant for a patent for the Odin Claim they had complied with the law, which required them to expend a hundred dollars a year in improving the mine. The mineral lands are reserved by the government for its citizens, and those aliens who have filed their declaration of intention of becoming such; and it is immaterial whether there has been a discovery, location, and faithful compliance with all other requirements, if this indispensable prerequisite is wanting. And it is equally clear that a location may be abandoned by the claimant failing to do the necessary amount of work on the mine to "represent" it. Indeed, no one is allowed

to have a patent for a mining claim without making satisfactory proof of having expended the required amount in money or labor (each year) in developing the mine. And it is also quite plain that one may possess and claim to own a piece of mining ground without ever being able to obtain or being entitled to a patent therefor. When, therefore, the complainants failed to make the allegations of their capacity to take title, and of having done the necessary amount of work each year to represent the mine, along with the other facts stated in the complaint, they failed to set forth a cause of action. The omissions were fatal to their suit. Indeed, it is impossible to tell from the complaint whether the plaintiffs have the requisite capacity to accept a title to the mine, even if decreed them by the court. To decide the case without this allegation, which we cannot supply, would be doing a vain and useless thing. In a contest between a citizen and an alien for a patent to a mining claim, there can be no doubt that the latter's pretensions would be invalid. Hence the absolute necessity, in a case like the one at bar, for the allegation of capacity. We see no error in the judgment of the lower court, and it is therefore affirmed, at cost of appellants.

*Judgment affirmed.*

DE WOLFE, J., concurs. McCONNELL, C. J., concurs on the ground only that the contract was void under the Statute of Frauds.