IDE, APPELLANT, *v.* LEISER, RESPONDENT.

OPTIONS— *Consideration—Extended option.*—The consideration for which an option to purchase lands is given is exhausted upon a failure of the holder to exercise the right within the time limited, and a contract to extend such option for a further period of time, made before the expiration of the original period, unless supported by a new consideration, is *nudum pactum* and void.

SAME— *Continuing offer to sell—Specific performance.*—An option for the purchase of lands, which has been extended for an additional period of time without consideration, while void as an option is good as a continuing offer to sell, and if accepted and a tender of the purchase price is made before the offer is retracted, a contract is completed which may be specifically enforced.

CONTRACTS—*Sale of lands—Statute of Frauds.*—It is no objection to a contract for the sale of lands that it could not be enforced against the vendee, if he were the party sought to be charged, as the Montana Statute of Frauds, section 219, fifth division of the Compiled Statutes, is satisfied by a writing subscribed by the party by whom the sale is to be made.

SPECIFIC PERFORMANCE—*Averments of complaint.*—In an action for the specific performance of a contract for the sale of lands it is not necessary for the complaint to allege that the plaintiff has no complete or adequate remedy at law in damages.

SAME—*Pleading—Averments of ownership.*—A complaint in such action, which alleges that defendant was the owner of the land at the time of the making of the contract, is sufficient, without alleging that he was the owner at the time of the filing of the complaint.

*Appeal from First Judicial District, Lewis and Clarke County.*

The demurrer to the complaint was sustained, and judgment entered for defendant by HUNT, J.

Statement of facts, prepared by the judge delivering the opinion.

The plaintiff pleads the following instrument in writing:—

"For and in consideration of one dollar ($1.00) to me in hand paid, I hereby agree to give Frank L. Ide the sole right and option to purchase from me at any time within ten days from the date of this instrument the following described property, to wit [describing the property]. I furthermore agree to furnish a good and sufficient deed of conveyance of said property, and of the whole thereof. The price of said property to be one thousand dollars ($1,000). Helena, Montana, September 24, 1889.                   J. J. LEISER."

"I hereby extend the above option for a period of ten days from this date. Helena, October 3, 1889.     J. J. LEISER."

The complaint further sets forth that on October 11, 1889, the plaintiff tendered defendant one thousand dollars, and demanded a conveyance of the property. That defendant refused to give the conveyance and still refuses. That plaintiff is still willing to pay said one thousand dollars. Plaintiff demands judgment that defendant make conveyance to him of the real estate described. The defendant demurred to the complaint on the ground that it did not set forth facts sufficient to constitute a cause of action. Demurrer was sustained, and judgment entered for the defendant. Plaintiff appeals from the judgment.

The question raised by the record, and discussed by counsel, is whether the instrument in writing pleaded, and the tender of one thousand dollars by plaintiff to defendant, October 11, 1889, are sufficient to entitle plaintiff to a conveyance as demanded. No tender of money or demand for a deed was made during the ten days limited in the original instrument; but were made during the period defined in the extension indorsed on the instrument.

*A. C. Botkin,* for Appellant.

The contract set out in the complaint possesses all the constituents required to invoke the aid of a court of equity to compel specific performance. The requirements of the Statute of Frauds are met by a note or memorandum of the contract, expressing the consideration in writing, and subscribed by the party by whom the sale is to be made. The description of the property is sufficient. It is only necessary that it should identify the property, or furnish the means by which it may be done, by pointing to some extrinsic fact by whose aid the ambiguity may be removed. (*Ryan* v. *Davis,* 5 Mont. 505.) The following cases illustrate what has been regarded as adequate certainty of description in contracts affecting real property: *Eggleston* v. *Wagner,* 46 Mich. 618; *Tallman* v. *Franklin,* 14 N. Y. 584; *Hurley* v. *Brown,* 98 Mass. 545; 96 Am. Dec. 671; *Scanlan* v. *Geddes,* 112 Mass. 15; *Slater* v. *Smith,* 117 Mass. 96; *Doty* v. *Wilder,* 15 Ill. 411; 60 Am. Dec. 756; *Nichols* v. *Johnson,* 10 Conn. 192; *Waring* v. *Ayres,* 40 N. Y. 357. Contracts of this character constitute a recognized exception to the rule requiring mutuality of obligation or remedy. (Waterman on Specific Performance, § 200; Pomeroy on Contracts, § 169, n. 1, § 170; *Schroeder* v. *Gemeinder,* 10 Nev. 355; *Perkins* v. *Hadsell,* 50 Ill. 217; *Johnson* v. *Trippe,* 33 Fed. Rep. 530.) It is questioned whether they can be called an exception to the rule respecting mutuality, since that element is supplied by the tender of the purchase price or the bringing of a suit for specific performance on the part of the vendee. (Waterman on Specific Performance, *supra; Woodruff* v. *Woodruff,* 44 N. J. Eq. 349; *Ewins* v. *Gordon,* 49 N. H. 444; *Seton* v. *Slade,* 7 Ves. 275; *Martin* v. *Mitchell,* 2 Jacob & W. 413;

*Shirley* v. *Shirley*, 7 Blackf. 452; *Clason* v. *Bailey*, 14 Johns. 484.) A proposition in writing to sell lands at a certain price, if taken within a certain time, is a continuing offer which may be retracted at any time, but if, not being retracted, it is accepted within the time, such offer and acceptance constitute a valid contract, the specific performance of which may be enforced by a bill in equity. (*Boston & Maine R. R. Co.* v. *Bartlett*, 3 Cush. 224; *Bradford* v. *Foster*, 87 Tenn. 8.) The Montana cases (*Ryan* v. *Dunphy*, 4 Mont. 342; *Mayger* v. *Cruse*, 5 Mont. 485; *Ducie* v. *Ford*, 8 Mont. 233) that seem to support the opposite view can easily be distinguished. In all of these cases the expressions of the court concerning mutuality of obligation are the merest *obiter dicta*. Where a party receives a consideration for an agreement to sell property within a certain time for a certain price, and the obligee tenders the price within the time, the obligor cannot escape performance by urging that the obligee was not obliged to pay it. Judge Pomeroy, who does not look with favor upon what he calls unilateral contracts, is nevertheless compelled to concede that the principle contended for by the plaintiff here is " in conformity with the overwhelming weight of judicial authority."

*McCutcheon & McIntire*, for Respondent;

The second agreement, written upon the first one, constitutes the contract upon which appellant brings this action. It is in all respects an entirely new contract. The time of the other had expired, and the minds of the parties met in a distinct and separate agreement. This being true, we submit that it is clearly within our Statute of Frauds in that it expresses no consideration whatever, and a contract without consideration is void. (Comp. Stats. p. 652, § 219; *Jones* v. *Holliday*, 11 Tex. 412; 62 Am. Dec. 487; *Brown* v. *Adams*, 1 Stew. 51; 18 Am. Dec. 36; *Sears* v. *Brink*, 3 Johns. 210; 3 Am. Dec. 475.) Our statute, which provides that, " every contract . . . . for the sale of any lands, or interest in lands, shall be void, unless the contract, or some note or memorandum thereof expressing the *consideration* be in writing, and be subscribed by the party by whom the sale is to be made," should be construed to imperatively demand a consideration for every contract of this

character. It will be seen by an examination of the first contract, and the one on which this action is brought, that they are identical in the privilege conferred upon the appellant. Both confer on him the privilege of an option on certain real estate for the period of ten days; and we maintain that it is necessary that each express some consideration on its face. That the last expresses no consideration shows conclusively that it is within the Statute of Frauds. (*Thacher* v. *Dinsmore*, 5 Mass. 299; 4 Am. Dec. 61.) Appellant seeks a specific performance of the contract or option referred to. To obtain such relief he must allege such facts as bring his case within the principles of equitable jurisdiction. This he has not done or attempted to do. For aught that appears in the complaint, he has a complete and adequate remedy at law for any damages he may have sustained by reason of any act of respondent. He has not alleged that his position is such that an action at law for damages will not afford him adequate relief. (Browne on Statute of Frauds, § 452; *Ducie* v. *Ford*, 8 Mont. 240.) It is a well-established principle in equity that specific performance will not be decreed in any case where an adequate remedy at law will lie. " Courts of equity were created to supply defects in proceedings at common law." (Story on Equity Jurisprudence, §§ 49, 54.) "Equity is the correction of that wherein the law by reason of its universality is deficient." This recognized rule is laid down with distinctness in *Jones* v. *Newhall*, 115 Mass. 244; 15 Am. Rep. 97, and cases there cited. Even if this memorandum on which this action is brought were a perfect contract, with sufficient consideration, and not within the Statute of Frauds, the appellant still would have no equitable relief, for he has a complete and adequate remedy at law which bars him from praying for a specific performance. (*Fowler* v. *Marshall*, 29 Kan. 665; *Bird* v. *Logan*, 35 Kan. 228.) But supposing this to have been a valid contract to which the plaintiff was a party, and based upon a good consideration, a bill in equity is not the remedy for enforcing it, the remedy at law for its violation being full, complete, and adequate. (*Strasburg R. R. Co.* v. *Echternacht*, 21 Pa. St. 220; 60 Am. Dec. 49.) The complaint is fatally defective in not alleging that it is within the power of defendant to comply with a decree for

specific performance. This is an essential allegation. (*Joseph*
v. *Holt*, 37 Cal. 256, 257.) The contract or option in this
case is unilateral. There is no mutuality in it. It binds Leiser
but not Ide. Upon it Leiser could not have recovered had he
sued Ide. "This feature of the contract must be made to
appear whenever a decree for specific performance *is sought, or
else the relief will be denied.* A party not bound by the agree-
ment itself has no right to call upon the court to enforce per-
formance against the other contracting party by expressing his
willingness in his bill to perform his part of the agreement."
(*Ducie* v. *Ford*, 8 Mont. 240; *Mayger* v. *Cruse*, 5 Mont. 497;
*Ryan* v. *Dunphy*, 4 Mont. 354; Pomeroy on Specific Perform-
ance, §§ 163, 164.) Possibly, as contended by appellant, "where
a party receives a consideration for an agreement to sell prop-
erty within a certain time, for a certain price, the obligor cannot
escape performance by urging that the obligee was not obliged
to pay it," is better doctrine than that announced in the Montana
cases; but it is not alleged in this case that a consideration was
received for the option dated October 3, 1889; nor does it state
either price or time. It is the merest *nudum pactum.* (*Bean* v.
*Burbank*, 16 Me. 458; *Gordon* v. *Darnell*, 5 Colo. 302; *Johnston*
v. *Trippe*, 33 Fed. Rep. 530.)

DE WITT, J. — For convenience of terms we will designate
the original document pleaded as the first instrument, and the
option therein as the first option, and the indorsement extend-
ing the time as the second instrument and option. We will
not discuss the validity of the first instrument as a foundation
for an action for specific performance. We will assume, for
the purpose of this decision, that it is good. The option
assumed to be granted therein was not exercised within the
time limited, and expired October 4th. The consideration for
this option was one dollar; whether paid by Ide to Leiser, or still
a debt owing from Ide to Leiser, is immaterial. That consider-
ation was exhausted by the expiration of the option on October
4th. Ide paid his money, the one dollar, and received his goods,
the option. Leiser took the one dollar, and delivered a con-
sideration therefor, viz., the option. The transaction was com-
plete, and the terms performed by each party to the agreement.

We come to the second instrument and option. No consideration is named therein, specifically or by reference. The consideration for the first option cannot do service for the second. That consideration was *functus officio* in the first instrument. A consideration determined by the parties to be the consideration for the sale of one article on one day, and so declared in writing, cannot, in the face of such declaration, be construed by the court as a consideration for the sale of another article on another day. The first ten days' option was a thing of value, and paid for as such. The second was another separate valuable article. Was there any consideration for its sale?

We believe some definitions and distinctions will aid this discussion. There may be *first*, a sale of lands; *second*, an agreement to sell land; and *third*, what is popularly called an option. The first is the actual transfer of title from grantor to grantee, by appropriate instrument of conveyance. The second is a contract to be performed in the future, and, if fulfilled, results in a sale. It is a preliminary to a sale, and is not the sale. Breaches, rescission, or release may occur, by which the contemplated sale never takes place. The third, an option, originally, is neither a sale, nor an agreement to sell. It is simply a contract, by which the owner of property (real estate being the species we are now discussing) agrees with another person that he shall have the right to buy his property, at a fixed price, within a time certain. He does not sell his land; he does not then agree to sell it; but he does then sell something, viz., the right or privilege to buy at the election, or option, of the other party. The second party gets *in præsenti*, not lands, or an agreement that he shall have lands, but he does get something of value, that is the right to call for and receive lands if he elects. The owner parts with his right to sell his lands (except to the second party) for a limited period. The second party receives this right, or rather, from his point of view he receives the right to elect to buy. That which the second party receives is of value, and in times of rapid inflations of prices, perhaps of great value. A contract must be supported by a consideration, whether it be the actual sale of lands, an agreement to sell lands, or the actual sale of the right to demand the conveyance of lands. A present conveyance

of lands is an executed contract. An agreement to sell is an executory contract. The sale of an option is an executed contract. That is to say, the lands are not sold. The contract is not executed as to them, but the option is as completely sold and transferred *in præsenti* as a piece of personal property instantly delivered on payment of the price. Now this option, this article of value and of commerce, must have a consideration to support its sale. As it is distinct from a sale of lands, or an agreement to sell lands, so its consideration must be distinct; although if a sale of the lands afterwards follows the option, the consideration for the option may be agreed to be applied, and often is as a part payment on the price of the lands. But there must be some consideration upon which the finger may be placed, and of which it may be said, this was given by the proposed vendee to the proposed vendor of the lands, as the price for the option, or privilege to purchase. We have been led into this endeavor to make clear our views of these distinctions, because, in the argument, counsel did not seem to give them as much weight, as they seem to us to demand. We refer to the following authorities: *Gordon* v. *Darnell,* 5 Colo. 302; *Bradford* v. *Foster,* 87 Tenn. 4; *Boston & M. R. R. Co.* v. *Bartlett,* 3 Cush. 224; *Bean* v. *Burbank,* 16 Me. 458; 33 Am. Dec. 681; *De Rutte* v. *Muldrow,* 16 Cal. 505; *Johnston* v. *Trippe,* 33 Fed. Rep. 530; *Thompson* v. *Dill,* 30 Ala. 444; *Mers* v. *Franklin Ins. Co.* 68 Mo. 127; *Thorne* v. *Deas,* 4 Johns. 84; *Burnet* v. *Bisco,* 4 Johns. 235; *Lees* v. *Whitcomb,* 5 Bing. 34; Bishop on Contracts, §§ 77, 78; *McDonald* v. *Bewick,* 51 Mich. 79; *Schroeder* v. *Gemeinder,* 10 Nev. 355; *Woodruff* v. *Woodruff,* 44 N. J. Eq. 855; *Perkins* v. *Hadsell,* 50 Ill. 216; Waterman on Specific Performance, § 200.

Examine the two options granted in the case before us. L. sold I. an option for ten days from September 24th, for one dollar. He then gives an option for another ten days from October 3d, for what? For nothing. L. transfers this option, this incorporeal valuable something, for nothing. The transfer of the option was *nudum pactum,* and void. But the point just discussed, being conceded, appellant still contends that this second instrument, or option, was a continuing offer

to sell, at a given price, and was accepted by respondent before retracted, and that such acceptance evidenced by, and accompanied with, the tender of the price and demand for a deed, constitute an agreement to sell land, which may be enforced in equity. We leave behind now our views of options, and consideration therefor, and meet a wholly different proposition.

Reading the two instruments together, we find that on October 3d, L. extended to I. an offer to sell his lands at the price of one thousand dollars. There was no consideration for the offer, and it could have been nullified by L. at any time by withdrawal. But it was accepted by I., while outstanding, the price tendered, and deed demanded. It must be plain, from the previous discussion, that we do not hold that the offer, *when made*, or at any moment before acceptance, was a sale of lands, an agreement to sell lands, or an option. But upon acceptance and tender, was not a contract completed? If one person offers to another to sell his property for a named price, and while the offer is unretracted, the other accept, tenders the money, and demands the property, that is a sale. The proposition is elementary. The property belongs to the vendee, and the money to the vendor. Such is precisely the situation of the parties herein. L. offered to sell for one thousand dollars. I. accepted, tendered the price, and demanded the property. Every element of a contract was present, parties, subject-matter, consideration, meeting of the minds, and mutuality. And as to the matter of mutuality, we are now beyond the defective option. We have simply an offer at a price, acceptance, payment, or tender, and demand. That this was a valid contract we cannot for a moment doubt.

In discussing a transaction of this nature, in *Gordon* v. *Darnell*, 5 Colo. 304, Beck, C. J., in a clear opinion, says: "Its legal effect is that of a continuing offer to sell, which is capable of being converted into a valid contract by a tender of the purchase money, or performance of its conditions, whatever they may be, within the time stated, and before the seller withdraws the offer to sell." Lurton, J., in *Bradford* v. *Foster*, 87 Tenn. 8, says: "Before acceptance, such an agreement can be regarded only as an offer in writing to sell upon specified terms the lands referred to. Such an offer if based upon no consider-

ation, could be withdrawn by the seller at any time before acceptance. It is the acceptance while outstanding, which gives an option not given upon a consideration vitality." In *Boston & M. R. R. Co.* v. *Bartlett*, 3 Cush. 227, we find the following by Fletcher, J.: "In the present case, though the writing signed by the defendants was but an offer, and an offer that might be revoked, yet while it remained in force, and unrevoked, it was a continuing offer during the time limited for acceptance; and, during the whole of that time, it was an offer every instant, but as soon as it was accepted, it ceased to be an offer merely, and then ripened into a contract." This case readily distinguishes *Bean* v. *Burbank*, 16 Me. 458, which may seem to hold a contrary doctrine. It also repudiates *Cooke* v. *Oxley*, 3 Term Rep. 653, and claims that the English case is said to be inaccurately reported, and, in any event, entirely disregarded in the later decisions. (See, also, *De Rutte* v. *Muldrow*, 16 Cal. 505; *Thompson* v. *Dill*, 30 Ala. 444; *Goodpaster* v. *Porter*, 11 Iowa, 161; *Vassault* v. *Edwards*, 43 Cal. 458; *Black* v. *Woodrow*, 39 Md. 194; Bishop on Contracts, §§ 77, 78; *Woodruff* v. *Woodruff*, 44 N. J. Eq. 355; *Shirley* v. *Shirley*, 7 Blackf. 451; *Perkins* v. *Hadsell*, 50 Ill. 216; *Lowber* v. *Connit*, 36 Wis. 176; Pomeroy on Contracts, § 169, n. 1.) We cannot but conclude that the transaction in the case at bar constituted a valid contract, upon which specific performance may be had.

But, conceding that the contract is *per se* good, it is urged that it is void under the Statute of Frauds. The statute is as follows: "Every contract for the leasing for a longer term than one year, or for the sale of any lands, or interest in lands, shall be void, unless the contract, or some note or memorandum thereof expressing the consideration, be in writing, and be subscribed by the party by whom the lease or sale is to be made." (Comp. Stats. § 210, p. 652.)

It is argued that the contract could not be enforced against the plaintiff, if he were the party sought to be charged, as he has not signed the instrument in writing, and that if it cannot be invoked against the plaintiff, by reason of the Statute of Frauds, it also cannot be urged against the defendant. But our statute does not require the writing to be signed by the party sought to be charged, but only by the party by whom the

sale is to be made. We have these facts: the party by whom the sale was to be made, L., signed the memorandum expressing the consideration; the buyer accepted. Not only was the contract complete, but the statute was satisfied. (*Bean* v. *Burbank*, 16 Me. 458; 33 Am. Dec. 681; *Vassault* v. *Edwards*, 43 Cal. 458; *Shirley* v. *Shirley*, 7 Blackf. 452; *Champlin* v. *Parish*, 11 Paige, 405; *Clason* v. *Bailey*, 14 Johns. 484; *Lowber* v. *Connit*, 36 Wis. 176.) We believe that this discussion leaves it clear that these views are not in conflict with *Ryan* v. *Dunphy*, 4 Mont. 342; *Mayger* v. *Cruse*, 5 Mont. 485; *Ducie* v. *Ford*, 8 Mont. 233. The demurrer on the point just investigated should have been overruled.

On behalf of the demurrer, it is again argued that the complaint is defective, in that it does not state that the plaintiff has no complete and adequate remedy at law in damages. It is undoubtedly the general rule that "in suits for specific performance, the party complaining must not only show the acts relied on as part performance, his willingness and ability to perform his part of the contract, but it must also appear that his position is such that an action at law for damages will not afford him an adequate relief." (*Ducie* v. *Ford*, 8 Mont. 240.) But actions for the conveyance of real estate are an exception, or perhaps not an exception, but rather the presumption exists, from the nature of the case, that damages are not adequate relief. In *Baumann* v. *Pinckney*, 118 N. Y. 604, the court says (Vann, J.): "Thus it happened that the court directed that the complaint should be dismissed . . . . because the plaintiff had an adequate remedy at law. According to a long and unbroken line of decisions, the latter ground is clearly untenable. As early as 1835 it was said by Chancellor Walworth that a suit in equity against the vendee to compel a specific performance of a contract to purchase land had always been sustained as a part of the appropriate and acknowledged jurisdiction of a court of equity, although the vendor has in most cases another remedy, by an action at law upon the agreement to purchase; . . . . the right of the vendee to maintain specific performance is too well settled to require further discussion." (And see cases there cited. See, also, Pomeroy's Equity Jurisprudence, §§ 221, 1402; Story on Equity Jurisprudence, § 746.) We are of opinion that the

demurrer on this ground also should have been overruled.
We are again asked to sustain the demurrer, for the reason
that the complaint does not allege that it is within the power
of the defendant to make the conveyance, in pursuance to a
decree of the court so requiring him; that is to say, the com-
plaint should allege that the defendant was still at the time of
filing the complaint, the owner of the land. The incapacity of
the defendant to perform, to be an excuse, must exist at the
time of the hearing. If he did not possess the subject-matter
at the time of making the contract, this does not constitute
legal impossibility, if he acquired it subsequently, at or before
the hearing. (Pomeroy's Equity Jurisprudence, § 1405, n. 1,
cases cited.) We do not now know what may be made to
appear on the hearing. That is not reached. We examine
now only a demurrer to the complaint, which confesses all the
facts alleged in the complaint. The complaint alleges that the
defendant was the owner on September 24th, when he executed
the writing. He has never withdrawn his offer to sell. The
offer ripened into a contract October 11th. The complaint was
filed the same day. If a person having executed a contract for
the sale of lands, knowingly executes any other agreement to
sell or dispose of the same lands to another person, he is guilty
of a felony. (§ 200, Crim. Laws.) Must the complaint allege
that defendant has not committed a felony? If defendant has
parted with the land *ad interim,* it is a fact peculiarly within
his own knowledge; knowledge which it may well be impossi-
ble to come to the plaintiff.

"It must be that in an action of this kind the complaint
must make a case in which the defendant is at least able to per-
form." (*Joseph* v. *Holt,* 37 Cal. 256.) Elliot, C. J., in *Cottrell*
v. *Cottrell,* 81 Ind. 88, says: "The principal objection urged
against it (the complaint) is that the first paragraph does not
allege that the ancestor of the appellants had any title to the
property which it is alleged he agreed to convey, and is therefore
bad. There are facts stated which show title in the decedent.
. . . . If the appellee is content with such title as a convey-
ance from the heirs of the deceased vendor will convey, the
appellants should not be allowed to prevent him from securing
it. The ancestor had bargained away all the title he had, and

whether that was much or little, the appellee's contract vested in him the right to have that for which he had contracted. It cannot be of importance to appellants whether that title was perfect or imperfect, for the appellee has a right to it, whatever its character may be. If he is satisfied they cannot complain, for it never descended to them, but had vested in the appellee, prior to the death of their ancestor."

In the case before us the plaintiff could preserve the *status in quo,* against innocent purchasers from the defendant by filing a notice of *lis pendens.* It is not necessary to say what might be our views upon the question of the inability of the defendant to perform on the appearance of further facts at the hearing. We are of the opinion under all the circumstances of this case that the complaint shows a *prima facie* case as to this point, and that the demurrer in this behalf should be overruled. These views seem to us to be the exercise of a sound discretion. (*Schroeder* v. *Gemeinder,* 10 Nev. 369; Pomeroy's Equity Jurisprudence, §§ 860, 1404.)

The judgment of the District Court is reversed, and the cause is remanded, with directions to that court to overrule the demurrer.

BLAKE, C. J., and HARWOOD, J., concur.