MONTGOMERY et al. v. WALDECK.

(Second Division. Nome. November 24, 1905.)

No. 996.

1. VENDOR AND PURCHASER—CONTRACTS—OPTIONS TO SELL.

The obligation by which one binds himself to sell, and leaves it discretionary with the other party to buy, is what is termed in law an "option," which is simply a contract by which the owner of property agrees with another person that he shall have the right to buy the property at a fixed price within a certain time.

2. FRAUDS, STATUTE OF—CONTRACTS—OPTIONS.

The plaintiffs gave a written option signed by them to the defendant, whereby they agreed to sell certain mines to the defendant at a fixed price if paid within a stated time. The defendant, though named in the option, and acquiring the right of purchase thereby, did not sign it. Upon suit by the plaintiffs to enforce the contract and to recover the sum for which they agreed to sell, *held*, that it was an agreement for the sale of real property, and could not be enforced, because the defendant, "the party to be charged," had not signed the agreement.

[Ed. Note.—For cases in point, see vol. 24, Cent. Dig. Frauds, Statute of, § 244.]

This action was brought to recover the sum of $3,000, and interest thereon at 8 per cent. per annum from August 1, 1903, which the plaintiffs claim to be due them under an agreement in writing, dated September 23, 1902, purporting to be between W. S. Montgomery, George Bedford, Arthur Bedford, and Joseph Ross, the plaintiffs, and A. L. Waldeck, the defendant. The agreement is under seal, and bears the signatures of the plaintiffs, but was not signed by the defendant. The agreement is in the words following:

"This agreement of escrow, made and entered into this 23d day of September, A. D. 1902, by and between W. S. Montgomery, George Bedford, Arthur Bedford, and Joseph Ross, all of Nome, Alaska, parties of the first part, and A. L. Waldeck, of New York City, party of the second part,

"Witnesseth: That the said parties of the first part, for a good and valuable consideration, have made, acknowledged, and executed

and placed in escrow with the Bank of Cape Nome, to be delivered in accordance with the terms, conditions, and requirements of this contract to the party of the second part herein, a good and sufficient quitclaim deed to the following named placer mining claims, which are more fully described in said deed, to wit:

"The Blue Bell, Venus, Jupiter, and Horicorn bench claims, situated in the Cape Nome mining and recording district, District of Alaska; that in consideration of the making and placing of the said deed in escrow, to be delivered as hereinafter stated, and the money to be paid by the said party of the second part, said second party agrees that on or before the 1st day of August, 1903, she will deposit to the credit of the said parties of the first part, either in the Bank of Cape Nome or the bank in Seattle with which said Bank of Cape Nome corresponds, to wit, the First National Bank, the sum of three thousand ($3,000) dollars, and will at the same time deposit a certificate, duly authenticated, entitling each of the said parties of the first part to a one-fourteenth interest of the capital stock of the company hereinafter agreed to be organized; that the said party of the second part hereby agrees to endeavor to organize a corporation, and upon the organization of said corporation and the delivery of the deed hereinbefore mentioned said party of the second part agrees to convey the properties herein mentioned and described in said deed by a good and sufficient deed of conveyance, conveying all of her right, title, and interest to the said corporation, and the capital stock hereinbefore mentioned is to be capital stock of the corporation to which said properties are conveyed; and the said party of the second part agrees to produce a certified copy of the articles of incorporation, and file the same with the said escrow holder, as evidence of the capitalization of the said corporation.

"And it is mutually agreed by the parties hereto that upon the payment of the said sum of three thousand ($3,000) dollars, as hereinbefore stated, and the deposit of the said capital stock, as hereinbefore agreed to be deposited, the said escrow holder be, and is hereby, authorized and directed to turn the said deed over to the said party of the second part; and in case said money and stock is not deposited in accordance with the terms of this contract, with said escrow holder, or its said correspondent, on or before the 1st day of August, 1903, then the said escrow holder is authorized and directed to return said deed to said parties of the first part, or their representative, for cancellation.

"It is further mutually agreed between all of the parties hereto that all of the terms, conditions, and requirements herein stated to be kept and performed shall extend to and bind the heirs, executors,

administrators, and assigns of the respective parties hereto, and time is of the essence of this contract.

"In witness whereof, the parties hereto have hereunto set their hands and seals in quadruplicate, the day and year first above written."

This instrument is signed, sealed, and acknowledged by all parties except A. L. Waldeck, the defendant. The case came to issue on the complaint, answer, and reply, and was tried before the court; the attorney for the defendant having before the trial signified to the plaintiffs' attorney that he had withdrawn from the case, and afterwards, before rendering of judgment by the court, having filed his written withdrawal as counsel in the case.

C. S. Hannum, for plaintiffs.

MOORE, District Judge. The theory of the plaintiffs, as set forth in the complaint and afterwards upheld by them at the trial, is that the instrument of writing sued upon is an absolute contract to sell and convey real estate.

The allegations of the defendant's answer is that the instrument is "an option, giving and granting unto the defendant the right and privilege of purchasing the mining claims mentioned therein set forth, and that in the event of the failure of the defendant to avail herself of the right and option to purchase said claims on or before August 1, 1903, then said right and option should terminate, and the deeds executed by the plaintiffs in compliance with the terms of the option should be returned by the escrow holder thereof to the plaintiffs for cancellation, according to the terms and conditions of said option agreement." The defendant admits in her answer that she did not exercise her right of purchase, did not accept said deeds, and disclaims all right, title, or interest in or to said claims. She furthermore admits that she did not pay the cash part of the price stipulated in the offer, and did not deposit the

same with the Bank of Cape Nome or the First National Bank of Seattle, Wash., to the credit of the plaintiffs, and denies that she is indebted to the plaintiffs in any sum whatever.

The questions raised by the pleadings are: What is the meaning of the agreement? And is the instrument an absolute agreement to sell and convey lands? Or is it, as set forth in defendant's answer, an agreement giving to defendant within a limited period of time the option to purchase the claims enumerated in the complaint?

It is first to be noted that the instrument is signed by the owners of the mining claims, who are the plaintiffs herein, but is not signed by the defendant. This indicates an intention to absolutely bind the plaintiffs to sell and convey, but to leave the defendant free to purchase or not after August 1, 1903. It will be conceded that men's acts and omissions often furnish us the best tokens of their motives and intentions.

Turning to the agreement itself, we find in the second and third paragraphs the usual covenant on the side of the plaintiffs for a consideration to sell and convey certain land to the defendant within a certain period, with a corresponding covenant on defendant's part, in consideration of the plaintiffs' covenants, to purchase said lands within the same period. If this were all of the agreement, and defendant had signed the agreement, the liability of the defendant in this action would, I conceive under the evidence, be fixed. The third paragraph of the agreement, however, beginning with the words, "And it is mutually agreed," stipulates that upon the payment of the cash part of the agreed price for the land, and upon the deposit of the stock according to the terms of the agreement, the escrow holder, the Nome bank, or its correspondent, shall turn over the deed from the plaintiffs to the defendant. It further provides that in case said money and stock are not deposited with said escrow holder in accordance with the terms of the "contract" on or before the first day of August, 1903, then "the said escrow holder is

authorized and directed to return said deed to said parties of the first part, or their representatives, for cancellation." In this paragraph is found the language which will serve as the key to open the intention of the contracting parties to clear view. It shows that the agreement was meant to be understood as an offer to sell to defendant the lands at any time not later than August 1, 1903, with the stipulation that at the expiration of that date the offer should be at an end, and both parties should be absolved from their obligation under the agreement, unless the offer made to defendant should be accepted on or before said date. It plainly means that if August 1, 1903, should be allowed by defendant to pass by without accepting the offer, the deeds should be surrendered to the plaintiffs, and surrendered for a definite purpose—namely, for cancellation.

"The obligation by which one binds himself to sell, and leaves it discretionary with the other party to buy, is what is termed in law an 'option,' which is simply a contract by which the owner of property agrees with another person that he shall have the right to buy the property at a fixed price within a certain time." Black v. Maddox, 104 Ga. 157, 30 S. E. 723—citing Ide v. Leiser, 10 Mont. 5, 24 Pac. 695, 24 Am. St. Rep. 17. The terms of the agreement come clearly within and are covered by the foregoing definition of an option, and this construction of the agreement accords with the facts and circumstances in evidence.

There are other reasons why the plaintiffs should not prevail in this action. There is no averment in the complaint that the deed put in escrow remains still at defendant's command ready for delivery. This, I conceive, is an averment essential to the complaint, and should have been supported by adequate proof at the trial. If the facts be that the escrow holder passed back to the plaintiffs the deed after August 1, 1903—the date of the termination of the bailment to the escrow holder—the plaintiffs

should not recover without alleging and proving that the deed was ready for delivery to the defendant upon her paying over the consideration mentioned in the agreement. Surely the plaintiffs could not be allowed to receive the price of the land, or any part thereof, while making no offer or showing no disposition to convey the property to the defendant.

Again, the statute of frauds and perjuries enacted for Alaska provides that, unless "an agreement for the sale of real property, or of any interest therein, or unless the same or some note or memorandum thereof expressing the consideration be in writing and subscribed by the party to be charged, or by his lawfully authorized agent," the agreement shall be void. If, then, the agreement in this case were an absolute contract to convey and purchase lands, a recovery could not be had according to law, because the defendant, "the party to be charged," did not sign the agreement.

Neither the letter in evidence, the prospectus, nor the oral testimony in the case afford any substantial indication that the defendant ever accepted the terms of the offer expressed in the agreement, nor that she understood the agreement as a contract to buy binding on her; hence, the rights of the parties must be left to rest upon a fair interpretation of the meaning of the agreement which is the basis of the action. The construction I have put upon the agreement leads at once to the conclusion that the plaintiffs have failed to establish the cause of action against the defendant set forth in their complaint, and the court will therefore find for the defendant upon the issues involved in the action.