McCAULL-WEBSTER ELEVATOR CO., Respondent, *v.* ROOT, Appellant.

(No. 4,432.)

(Submitted September 14, 1921. Decided October 10, 1921.)

[201 Pac. 319.]

*Void Contracts — Sales — Absence of Consideration — Lack of Mutuality—Options.*

> 1. An agreement to sell and deliver wheat between certain dates, "buyer's option," by the terms of which the buyer did not bind himself to accept it when offered, which lacked both consideration and mutuality, and which was immediately withdrawn upon refusal of the buyer to make part payment understood by the seller to be made upon its execution, was neither a contract of sale, a contract of sale and purchase nor an option contract.

*Appeals from District Court, Fergus County; Jack Briscoe, Judge.*

Action by the McCaull-Webster Elevator Company against A. O. Root. From a judgment for plaintiff, and an order overruling his motion for a new trial, defendant appeals. Reversed and remanded, with directions to dismiss.

*Mr. E. K. Cheadle* and *Mr. Thos. F. Arnett,* for Appellant, submitted a brief; *Mr. Cheadle* argued the cause orally.

The contract in question is executed by one party only, to-wit, the appellant. It is void for want of mutuality, because under this contract the appellant could not have compelled the respondent to accept the wheat and to pay the price of $1.30 per bushel for it. There is an entire absence of consideration. There is no promise, either express or implied, to be fulfilled by the respondent, the McCaull-Webster Elevator Company, and no money or valuable thing passing from respondent to appellant as consideration for the agreement of the appellant to sell and deliver the wheat. If this view be correct, the

instrument was simply an option and not a contract of sale. Still less was it an agreement of purchase.

It is not contended that the mere absence of words of purchase from the contract would make it an option instead of a contract of purchase and sale, but there must be something in it from which the inference can legitimately be drawn that the respondent obligated itself to purchase the said wheat. The words "buyer's option" would seem to make it optional with the respondent whether it would buy the grain or not. The contract in question is strictly unilateral, and therefore is not such a contract on which an action can be maintained. (*McDonald* v. *Bewick,* 51 Mich. 79, 16 N. W. 240; *Wilkinson* v. *Heavenrich,* 58 Mich. 574, 55 Am. Rep. 708, 26 N. W. 139; *Stensgaard* v. *Smith,* 743 Minn. 11, 19 Am. St. Rep. 205, 44 N. W. 669; *Wood* v. *Edwards,* 19 Johns. (N. Y.) 205.)

The transaction between the parties to this action was not a sale. A sale would have been a transfer of the property in the wheat mentioned in the contract for a price in money. No transfer of the property in the wheat was made because no price was given for it, and the transfer of the wheat itself was, of course, never made. Therefore, the contract can be construed only as an option contract for the sale of the said wheat. It is not an agreement of sale because an agreement of sale and purchase is a contract by which one party agrees to sell and the other party agrees to buy the property, the subject of sale, for a price in money, and there is no such an agreement on the part of the respondents in this case. The words "buyer's option" above referred to seem distinctly to make it optional with the respondent whether it would purchase the wheat or not within the dates specified. Under this contract, if there were a consideration for it, the respondent would have only the right to elect to purchase the grain. If the respondent had exercised its "buyer's option," the contract would then have been turned into an agreement of sale and purchase by the appellant to the respondent, but this

right of election was never exercised within the time limited in the contract. (See James on Option Contracts, p. 11, and cases cited thereunder.)

*Messrs. Belden & De Kalb,* for Respondent, submitted a brief; *Mr. H. L. De Kalb* argued the cause orally.

The writing raises a presumption of consideration. (Sec. 5010, Rev. Codes.) A consideration is defined by section 5001. In *Noyes* v. *Young,* 32 Mont. 226, 236, 79 Pac. 1063, this court holds that the consideration need not be alleged or proved independent of the contract. Appellant seems to feel that a consideration must always be a present money consideration. This is not true in Montana or elsewhere, so far as we know. A consideration may consist in a promise for a promise. (*Poughkeepsie etc. Plank Road Co.* v. *Griffin,* 21 Barb. (N. Y.) 454; 13 C. J. 328.)

It cannot be contended that had Root delivered the grain on the first day of November, 1916, to the respondent he would not have been entitled to receive $1.30 per bushel, and McCaull-Webster Elevator Company would have been obliged to pay that sum for the wheat. "Buyer's option," as used in this contract, is only the option of the buyer to order the grain in at any time between the twenty-third day of August and the first day of November. On the first day of November, the grain must be delivered in any event. We need not go outside the terms of the contract to determine this. By the terms of the contract McCaull-Webster Elevator Company has not the option to order the grain in at any other time except between the specified dates. If the words "buyer's option" had not been inserted in the contract, Root would have had the right to deliver at any date between the dates named, but would have been obliged to deliver on the last named date. "Where delivery is to be made between certain dates, the seller is not bound to deliver until the last day." (35 Cyc. 177.)

Where the contract specifies dates, as does this one, between which delivery can be made at buyer's option, the buyer simply reserves the right to require delivery at some intermediate date, but it does not relieve the seller from his obligation to deliver on the last named day. Without the use of the words "buyer's option," a contract of this character, so far as the obligation on the part of the seller is concerned, would be equivalent to the obligation of the maker of a promissory note who agreed to pay the note on or before a certain date, being obligated to pay it on the date, and privileged to pay it sooner, if he saw fit. Here the delivery could not be made sooner than the last date specified, except required by the buyer. See the following cases which illustrate these points: *Harman* v. *Washington Fuel Co.*, 228 Ill. 298, 81 N. E. 1017; *Croninger* v. *Crocker*, 62 N. Y. 151; *Conawingo Petroleum Refining Co.* v. *Cunningham*, 75 Pa. St. 138; *Sousely* v. *Burns' Admr.*, 10 Bush (Ky.), 87.

MR. CHIEF COMMISSIONER POORMAN prepared the opinion for the court.

This is an appeal by the defendant from a judgment in favor of the plaintiff, made and entered in an action tried to the court sitting without a jury, and from an order overruling the defendant's motion for a new trial. The complaint alleges that the plaintiff is a corporation and that on or about the 23d of August, 1916, "the plaintiff and defendant entered into an agreement for a consideration as therein expressed, whereby defendant agreed to sell and plaintiff agreed to purchase for the sum of $1.30 per bushel 1,000 bushels of wheat," and that defendant promised and agreed to deliver the same to the plaintiff at its elevator in Geraldine, Montana, on or before the first day of November, 1916, but that defendant neglected and refused to comply with the terms of the contract and the plaintiff was damaged thereby. To this complaint the defendant filed his answer, admitting the execution of an agree-

ment on August 23, 1916, for the sale of a quantity of wheat to the plaintiff at $1.30 per bushel, but denying that he has sufficient knowledge or information to form a belief as to the terms of said agreement, and for a further answer alleging that he entered into an agreement on the 23d of August, 1916, to deliver certain wheat to the plaintiff and that it was understood and agreed that the plaintiff should pay to the defendant a part of the purchase price; "that defendant would not have signed said contract only upon the inducement of plaintiff that part payment of said grain would be paid upon defendant's signing the same"; that defendant was misled by plaintiff and induced to execute said agreement to deliver said grain; that not any consideration or anything of value was paid to the defendant by the plaintiff for said agreement and that defendant did not deliver any of said grain to the plaintiff."

The agreement referred to in the complaint is as follows:

"Contract—The McCaull-Webster Elevator Co.

"No. 36.          Geraldine, Mont., Station, Aug. 23, 1916.

"I, A. O. Root, do hereby sell and agree to deliver to the McCaull-Webster Elevator Company, or their agent, at their elevator, warehouse, or cribs, as they may designate, at Geraldine, station, in Chouteau county, state of Montana, between the 23d day of Aug., 1916, and the 1st day of Nov., 1916, buyer's option, 1,000 bushels of good, sound, dry, and merchantable wheat to grade 2 H. M., for which I am to receive one and 30/100 dollars per bushel; said wheat being now in my possession and free from incumbrance. I do furthermore agree that, in case of default in the delivery of the grain as stipulated above, or by such date as buyer may extend the time of expiration of this contract, to pay as liquidation damages the difference between the price as above stipulated and the market value of same grain and grade on date this contract is closed by the buyer. I do furthermore acknowledge the receipt

of none dollars as part payment on this sale, and confirm the contract as above made.

"Witness my hand this 23d day of August, 1916.

"Witness: Robt. Fulton. ·                      A. O. Root."

At the trial of the case the plaintiff introduced the agreement in evidence, and offered further evidence as to damages suffered by the plaintiff, and rested. The defendant testified to the effect that at the time of signing the agreement "He [Fulton] wanted me to sell some wheat to be delivered in the future, and I finally told him I would do so. He produced the blank form of contract, filled it out, and I signed it. I said to Mr. Fulton, 'How much do I get down?' I needed some money at the time; he shoved the contract in his drawer and said, 'None.' I answered that 'I would not have signed the contract if I did not want to raise some money,' and Fulton replied, 'We never do.' I answered, 'I don't know much about the laws of Montana, but in some states that contract is not worth the paper it is written on; I would not have to deliver, or you receive or pay for, the wheat.' Mr. Fulton answered, 'We don't pay anything on the contracts.' He refused to pay me anything on the contracts, and I refused any delivery. * * * I told him that I would not deliver grain on that contract unless he would pay me something on it." He further testified that the plaintiff did not make any demand upon him for the delivery of the wheat until some time in December, 1916. The defendant rested at the close of Mr. Root's testimony and the plaintiff did not offer any rebuttal evidence.

The agreement on its face shows that no consideration was [1] paid therefor. The testimony of the defendant is also to the effect that there was not any consideration paid for the agreement and that he signed it with the understanding that a part payment was to be made. By the terms of the agreement the plaintiff does not bind itself to accept the wheat, nor does it make any promise whatsoever. The agreement was

[61 Mont. 82.]

not ''closed by the buyer.'' The agreement is wholly unilateral, is wholly without consideration, and for that reason cannot be sustained as a contract of sale; neither can it be sustained as a contract of sale and purchase, for it lacks both consideration and mutuality; neither can it be sustained as an option contract, for there was neither consideration nor acceptance thereof within the time named in it, and the same, according to the undisputed evidence of the defendant, was withdrawn immediately after its signing and the refusal of the plaintiff to pay any consideration therefor. (*Ide* v. *Leiser,* 10 Mont. 5, 24 Am. St. Rep. 17, 24 Pac. 695; *Snider* v. *Yarbrough,* 43 Mont. 203, 115 Pac. 411; *Donlan* v. *Arnold,* 48 Mont. 416, 138 Pac. 775.)

For the reasons herein stated, we recommend that the judgment and order appealed from be reversed and the cause remanded to the district court, with directions to dismiss the action.

Per Curiam: For the reasons given in the foregoing opinion, the judgment and order appealed from are reversed, and the cause remanded to the district court, with directions to dismiss the action.

*Reversed.*